295 So.2d 720 (1974)
Albert VENA, Appellant,
v.
The STATE of Florida, Appellee.
No. 73-1108.
District Court of Appeal of Florida, Third District.
June 11, 1974.
Bierman & Sonnett and Richard A. Beiley, Miami, for appellant.
*721 Robert L. Shevin, Atty. Gen., and Lance R. Stelzer, Asst. Atty. Gen., for appellee.
Before PEARSON, CARROLL and HAVERFIELD, JJ.
PEARSON, Judge.
The appellant, Albert Vena, and a co-defendant were charged by information with six felony counts, all arising out of a succession of events in which the appellant allegedly used violent means to try to force payment of a claimed debt due a girl friend. The defendants were tried before a jury. The following verdicts were returned as to the appellant:
Count I  Guilty of Count One, Breaking and Entering Dwelling and Assaulting Persons Therein
Count II  Not Guilty of Robbery
Count III  Guilty of Count Three (robbery) as Petit Larceny
Count IV  Guilty of False Imprisonment
Count V  Guilty of False Imprisonment
Count VI  Not Guilty of Unlawful Possession of Firearm While Engaged in Criminal Offense
A person identified as Peter Gayle was staying at his mother's home located in Miami Beach, Florida. Gayle's friend, Stuart Wallach, was also staying at the house. Sometime between 1:00 a.m. and 1:30 a.m. on the night in question Gayle heard someone knocking at the front door. When he asked who was there, a familiar voice answered, "Sweet Face, I am home". He recognized this as the voice of Linda Narbona, whom he had met more than a year before. Gayle and Linda had lived together for a time.
After they met and were living together Linda earned some $35,000 in Las Vegas by activities which need not be described. She gave the money to Gayle to hold for her. Gayle placed the money in safe deposit boxes in Los Angeles and kept the keys to the boxes. It is claimed that shortly before the events in litigation, Linda told Gayle she wanted her money back but that Gayle would not give it to her.
When Gayle opened the front door, Linda and three men rushed in and knocked him to the floor. The men were wearing ski masks and two of them had guns. One went to Wallach's room. He demanded "Gayle's money" and searched the house. After Gayle was beaten, he produced the safe deposit box keys and told them the money was in California. In the meantime, Wallach had been overcome and handcuffed to his bed.
At approximately 8:00 a.m., Gayle and two of the men left the house to go to California to get Linda's money. Linda and the other man stayed behind with Stuart Wallach. Gayle identified the defendant as one of the men who accompanied him to California. They took a suitcase with them which contained guns and handcuffs among other things. Gayle and the two men went to the Miami International Airport where they bought three tickets to California and put the suitcase in a locker.
The three arrived in Los Angeles at 11:30 a.m. and rented a car. They went to the various banks where the money was in safe deposit boxes and removed the money. After obtaining approximately $35,000, the men let Gayle go. Gayle later returned to Miami.
In the interim, Linda and the third man left the house on Miami Beach at approximately 5:30 p.m. Wallach was able to open a window and cry out for help. A neighbor heard him and called the police. Wallach was able to identify the defendant as one of the men inside the house and one of the men who had left with Gayle.
*722 After Gayle returned to his mother's house, he was interviewed by a member of the Miami Beach Police Department. He was taken to the police station where he gave a written statement indicating that he owed some money for gambling; he also stated that he was beaten as a result of the debt, and that he deserved the beating. Sometime later Gayle changed his story and told of the events which have been set out.
An investigation turned up the suitcase in the locker at Miami International Airport and fingerprints found on a pair of handcuffs were identified as the fingerprints of the defendant. A comparison was made from the standards taken from defendant. There is a question in this appeal as to whether defense counsel was given notice of the taking of the standards. The fingerprints were admitted over objection at defendant's trial.
On this appeal, two points are presented for our review. Initially, we will consider the point urging prejudicial error in the admitting of the fingerprint testimony upon the claim that the State failed to properly notify the defendant or his attorney of the hearing and the time and place of the actual taking. Then we will consider a second point urging error because the jury verdict found the defendant guilty of breaking and entering and assaulting persons without mentioning a specific intent, while the judgment pronounced the defendant guilty of breaking and entering with intent to commit the felony of robbery and assaulting persons therein.
Florida Rule of Criminal Procedure 3.220(b)(1), 33 F.S.A., requires the State to give defense counsel notice of such things as the taking of fingerprints.[1] However, a violation of a rule of procedure does not automatically result in a reversal. As the Supreme Court of Florida stated in Richardson v. State, Fla. 1971, 246 So.2d 771:
"... the violation of a rule of procedure prescribed by this Court does not call for a reversal of a conviction unless the record discloses that noncompliance with the rule resulted in prejudice or harm to the defendant. All of the four District Courts of Appeal have now so held and we now place our stamp of approval upon this principle. See Howard v. State, Fla.App., 239 So.2d 83; Wilson v. State, Fla.App., 220 So.2d 426, 427; Buttler v. State, Fla., 238 So.2d 313; Rhome v. State, Fla., 222 So.2d 431; Ramirez v. State, Fourth District, Fla., 241 So.2d 744, Opinion filed October 14, 1970."
Defendant had no right to refuse to submit to fingerprinting by the State. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Consequently, depending upon the facts of a given case, the State's inadvertent failure to give notice of the taking of fingerprints to counsel for defendant may be considered harmless rather than prejudicial error.
In the present instance, the State did serve the attorney for the defendant with a copy of the motion to take fingerprints; subsequently, the State served a notice of hearing which was blank in the portion where the particular motion that was to be heard should have been listed. *723 Appellant's attorney did not appear at the hearing. We hold that the failure to list the motion was under the circumstances of this case harmless error.
Turning now to the discrepancy between the verdict and the judgment, we think that it is important to consider the charge and the evidence before the jury. Count one of the information alleged that Albert Vena:
"... did unlawfully and feloniously break and enter the dwelling located at 3450 Garden Avenue, City of Miami Beach, Dade County, Florida, property of Peter Gayle also known as Peter Schwartz, as owner, tenant or lessee with intent to commit a felony therein, to-wit: Grand Larceny, with intent to unlawfully take, steal and carry away money, goods and chattels of the value of One Hundred Dollars ($100.00) or more, good and lawful money of the United States of America, and the said Albert Louis Vena and Thomas Charles Conway, did then and there make an assault upon the persons of Peter Gayle also known as Peter Schwartz and upon Stuart Wallach, which persons were lawfully therein, in violation of 810.01 (1) Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida."
The verdict of the jury upon this count was as follows: "Albert Louis Vena, guilty of Count One, Breaking and Entering Dwelling and Assaulting Persons Therein".
The judgment of the court upon count one reads as follows:
"... Albert Louis Vena have been regularly tried and convicted of unlawfully and feloniously Breaking and Entering a Dwelling House located in Dade County, Florida, with intent to Commit a Felony, to-wit: Robbery, and while unlawfully therein Assaulting Persons lawfully therein, ...".
The evidence viewed in the light most favorable to the verdict showed that the defendant entered a dwelling with intent to commit grand larceny. He was adjudged guilty of breaking and entering a dwelling with intent to commit robbery. Robbery is not a lesser included offense of grand larceny. It therefore appears that the judgment cannot stand in its present form. The question is whether or not the verdict of the jury will support a judgment of guilty under the charge as framed in count one.
The appellant relies upon Turnnett v. State, 116 Fla. 562, 156 So. 538 (1934); Simpson v. State, 81 Fla. 292, 87 So. 920 (1921); and Arnold v. State, Fla. 1955, 83 So.2d 105, for reversal. The first two of the cited cases simply hold that the evidence must establish the element of intent. The evidence of intent is clearly sufficient in the instant case. The last cited case holds that robbery is not a lesser included offense of grand larceny. Therefore, since the information charged that the intent of the appellant was to commit grand larceny and the judgment pronounced him guilty of the intent to commit robbery, the judgment cannot stand.
The jury did find the appellant guilty of the charge in count one, i.e., breaking and entering a dwelling with intent to commit grand larceny. The worst that can be said about the verdict is that it was ambiguous. It was sufficient when it stated: "guilty of Count One". The added language "Breaking and Entering Dwelling and Assaulting Persons Therein" does not show a failure to find the intent to commit a felony. In Ex parte Wilson, 153 Fla. 459, 14 So.2d 846 (1943), the Supreme Court of Florida held that an ambiguous verdict which clearly showed a finding of guilt of the crime charged was sufficient to support a finding *724 of guilt of a lesser included offense. In the Wilson case the judgment was, as here, imperfect. The court returned the case for the entry of a proper judgment and sentence. See also Herring v. State, 131 Fla. 627, 180 So. 15 (1938); Davis v. Ivey, 93 Fla. 387, 112 So. 264 (1927).
Accordingly, the judgment and sentence upon count one of the information is set aside and the cause is remanded with instructions that the court correctly adjudge the appellant guilty as charged in count one of the information and pronounce his sentence. All other portions of the judgment and sentences thereon are affirmed.
Affirmed in part, reversed in part and remanded.
NOTES
[1] Disclosure to Prosecution.
"(1) After the filing of the indictment or information and subject to constitutional limitations, a judicial officer may require the accused to:
* * * * * * *
"(iii) Be fingerprinted;
* * * * * * *
"(2) Whenever the personal appearance of the accused is required for the foregoing purposes, reasonable notice of the time and place of such appearance shall be given by the prosecuting attorney to the accused and his counsel. Provisions may be made for appearances for such purposes in an order admitting the accused to bail or providing for his pre-trial release."