246 So.2d 771 (1971)
William H. RICHARDSON, Petitioner,
v.
STATE of Florida, Respondent.
No. 39692.
Supreme Court of Florida.
March 31, 1971.
Rehearing Denied May 7, 1971.
*772 Thomas J. Hanlon, Tampa, for petitioner.
Robert L. Shevin, Atty.Gen., and Charles Corces, Jr., Asst.Atty.Gen., for respondent.
MASON, Circuit Judge:
We granted certiorari to the District Court of Appeal, Second District of Florida, to review the decision of that court which affirmed the judgment of the Hillsborough County Criminal Court of Record convicting the petitioner of the crime of arson following jury trial. Richardson v. State, Fla.App., 233 So.2d 868.
The State challenges this Court's jurisdiction to review the decision below, claiming that no conflict has been shown between the decision and a decision of another district court or of this court.
Petitioner contends there exists a conflict between the District Court's decision *773 and a rule promulgated by this Court, viz, Rule 1.220(e) of the Florida Rules of Criminal Procedure, 33 F.S.A. which became effective December 31st, 1967, and which was in effect when the case was tried in the trial court below. This rule requires the prosecution, upon written request filed in the cause by the defendant, to furnish to the defendant a list of all witnesses known to the prosecuting attorney to have information which may be relevant to the offense charged, and to any defense of the person charged with respect thereto. The rule requires that the list be furnished by the prosecuting attorney within five days after receipt by him of the defendant's offer to furnish to the prosecuting attorney his list of prospective witnesses with their addresses.
Paragraph (g) of the Rule provides that in the event either party fails to comply with any provision of the Rule the court may impose certain sanctions against such party, including the granting of a continuance or the prohibiting of such party from calling a witness whose name has not been disclosed, or it may enter such other order as it deems just under the circumstances.
The District Court held, in effect, that the record of the proceedings in the trial court disclosed that there was not strict compliance with the Rule by the prosecuting attorney in the disclosure of witnesses, as required by the Rule, but that the record further disclosed that the petitioner (Appellant below) was not prejudiced by respondent's (Appellee's below) noncompliance. By way of obiter dicta and as a guideline and warning for the future, the District Court went on to say that in the future it will expect the State to comply with the Florida Rules of Criminal Procedure, and that non-compliance "could very well require reversal or a new trial."
We have jurisdiction to review the decision below because of the provision contained in Section 4(2) of Article V of the Florida Constitution F.S.A., (1968) which confers jurisdiction upon this Court to review a decision of a District Court of Appeal "which affects a class of constitutional or state officers."
The decision below reviewed the failure of the prosecuting attorney of the Criminal Court of Record of Hillsborough County to comply with the discovery requirements of the Rule in question, and the effect of such failure upon the validity of the trial in which the petitioner was convicted. In doing so it also reviewed the exercise of the trial court's discretion in refusing to grant petitioner's motion for mistrial based upon the failure of the prosecuting attorney to disclose the name of a witness who, the petitioner claimed, had knowledge of facts "relevant to the offense charged" and to the defense of the petitioner, and whose name was required, in the view of the petitioner, to be furnished him by the express provision of the Rule. Thus the decision of the District Court which holds that non-compliance with the discovery requirements of the Rule does not ipso facto constitute ground for reversal of a conviction even though it is made to appear that the Rule has not been strictly complied with, and that such reversal depends upon whether or not the person charged has been prejudiced by non-compliance, affects two classes of constitutional or state officers, viz, prosecuting officers and trial courts in the exercise of their respective powers and duties in the prosecution and trial of criminal cases.
It is true that the decision below was determinative only of the cause reviewed by the appellate court, but the ultimate effect of it affects all prosecuting attorneys and trial judges in the trial of criminal cases. This Court, in Florida State Board of Health v. Lewis, Fla., 149 So.2d 41, speaking of this particular provision of the Constitution, said:
"The obvious purpose of the subject constitutional provision was to authorize this Court to review decisions which, in the ultimate, would affect all constitutional or state officers exercising the *774 same powers, even though only one of such officers might be involved in the particular litigation."
To like effect is State v. Robinson, Fla., 132 So.2d 156.
The decision below in the ultimate affects all prosecuting attorneys insofar as it interprets their duties in connection with compliance with Rules of Criminal Procedure promulgated by this Court, and all trial judges when called upon to interpret the effects of non-compliance by such prosecuting attorneys. Its pronouncement presents to this Court the duty to determine if the District Court of Appeal has properly interpreted the respective duties, powers and obligations of such officers under such Rules, and particularly Rule 1.220.
We thus have jurisdiction, and now turn to the merits of the cause before us. In so doing we hold that the violation of a rule of procedure prescribed by this Court does not call for a reversal of a conviction unless the record discloses that non-compliance with the rule resulted in prejudice or harm to the defendant. All of the four District Courts of Appeal have now so held and we now place our stamp of approval upon this principle. See Howard v. State, Fla.App., 239 So.2d 83; Wilson v. State, Fla.App., 220 So.2d 426, 427; Buttler v. State, Fla.App., 238 So.2d 313; Rhome v. State, Fla., 222 So.2d 431; Ramirez v. State, Fourth District, Fla., 241 So.2d 744, Opinion filed October 14, 1970. This is particularly true in view of the purpose of the Florida Rules of Criminal Procedure. As stated in Rule 1.020 of the rules themselves: "These rules are intended to provide for the first determination of every criminal proceeding. They shall be construed to secure simplicity in procedure and fairness in administration." Furthermore, the Rule in question must be considered by an appellate court in pari materia with the provisions of our harmless error statute, viz, F.S. 924.33, F.S.A. which provides that rulings or proceedings in criminal cases that are not prejudicial or harmful do not require reversal. As stated in Howard v. State, supra:
"The cited statute is but a codification of the `harmless error' doctrine which has been developed by judicial decision to avoid reversal in cases where it appears that justice has been served and that in all probability a new trial with the same admissible evidence would not alter the end result."
See Urga v. State, 155 So.2d 719, Fla.App., 1963, and cases cited therein.
Therefore, petitioner's contention that the State's non-compliance with the Rule entitles him, as a matter of right, to have a non-listed witness excluded from testifying, or to have a mistrial where it becomes evident during the trial that there existed a witness who probably had knowledge of facts relevant to petitioner's defense, is not tenable. The Rule was designed to furnish a defendant with information which would bona fide assist him in the defense of the charge against him. It was never intended to furnish a defendant with a procedural device to escape justice. Yet such a result would be inescapable if the State's non-compliance with the rule necessarily required the exclusion of the non-listed witnesses from testifying, or a mistrial under the circumstance just stated. See Ramirez v. State, supra.
On the other hand, if it is evident from the record that the non-compliance with the Rule by the State resulted in harm or prejudice to a defendant through failure to furnish the names of witnesses, and such witnesses were permitted to testify in behalf of the State, or if it should affirmatively appear that the State failed to furnish to the defendant the name of a witness known to the State to have information relevant to the offense charged against the defendant, or to any defense of the defendant with respect thereto, and the latter situation resulted in harm or prejudice to the defendant, an appellate *775 court reviewing his conviction must reverse. The trial court has discretion to determine whether the non-compliance would result in harm or prejudice to the defendant, but the court's discretion can be properly exercised only after the court has made an adequate inquiry into all of the surrounding circumstances. We think that the District Court of Appeal for the Fourth District has succinctly stated the burden that the Rule places both upon the prosecuting attorney and upon the trial court in the following quoted extract from its opinion in Ramirez v. State, supra:
"The point is that if, during the course of the proceedings, it is brought to the attention of the trial court that the state has failed to comply with Rule 1.220(e) CrPR, the court's discretion can be properly exercised only after the court has made an adequate inquiry into all of the surrounding circumstances. Without intending to limit the nature or scope of such inquiry, we think it would undoubtedly cover at least such questions as whether the state's violation was inadvertent or wilful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial.
Once the court has considered all of the circumstances, it has authority to enter such order as it deems just. Rule 1.220(g) CrPR. However, in those cases where the court determines that the state's noncompliance with the rule has not prejudiced the ability of the defendant to properly prepare for trial, we deem it essential that the circumstances establishing non-prejudice to the defendant affirmatively appear in the record. In the cases of Buttler v. State, supra; Richardson v. State, supra; and Newman v. State, Fla. 1967, 196 So.2d 897, the determination that the state's failure (to furnish the defendant with information on witnesses) was non-prejudicial to the defendant appears to have been based upon the finding that such non-prejudice to the defendant affirmatively appeared in the record."
Our examination of the facts before the trial court bearing upon the issue of the State's noncompliance with the Rule discloses that the petitioner (defendant in the trial court) complained, and now complains, about the State's use at the trial of the witness, John Robert Davis, who had been jointly charged with the petitioner in the offense, and whose name was not furnished to petitioner's counsel until the day before the trial as a State's witness. The name of this witness was not given to petitioner's counsel by the prosecuting attorney at the time the latter respondent to the petitioner's demand for the State's list of witnesses made several days before the beginning of the trial. The reason given by the State for omitting this witness's name from the list was that he was a co-defendant in the information. As such he was, of course, known to the petitioner as a party allegedly having knowledge of the offense with which both he and the petitioner were charged. On the day before trial this co-defendant was granted immunity from prosecution in return for his offer to testify for the State and his name given to petitioner's counsel as a State witness. The State tendered this witness to petitioner's counsel for interview on the same day. For reasons of his own such counsel did not avail himself of such opportunity. Up until that time he was a co-defendant in the information, and the State was in no position to offer him to petitioner's counsel for questioning. Counsel complained to the trial court and the court offered to let counsel interview the State's witnesses, including John Robert Davis, before the beginning of the trial. A recess was taken for that purpose. During such recess petitioner's counsel interviewed all of the State's witnesses except John Robert Davis. When the court was called to order petitioner's counsel informed the court that he had not questioned Davis, giving *776 as his reason that he wanted to ask him certain specific questions before a court reporter. He had not asked for a reporter nor was one denied him. The witness did not refuse to be interviewed by petitioner's counsel. When court resumed counsel asked for a continuance of the trial, stating that he wanted further opportunity to interview this particular witness. This request was denied by the Court, a jury was selected and the case proceeded to trial. At the close of the first day of testimony and after court had recessed until the following morning, petitioner's counsel during the evening did interview the witness, John Robert Davis. No error was committed by the court for such denial of a continuance for the State's failure to furnish this witness' name.
As a result of his interview petitioner's counsel learned of the name of one Dick Davis who was supposed to be the "contact man" between the owner of the building which burned and who was with the owner when the fire occurred. Later in the trial John Robert Davis testified that this Dick Davis helped set up the arrangements and price to be paid by the owner for the arson.
When the trial resumed on the second day, petitioner's counsel moved for a mistrial or a continuance because of the failure of the State to furnish him the name of Dick Davis prior to trial. This motion was denied by the court and the trial resumed, resulting in the petitioner's conviction.
There is reason to believe that the State knew that a co-defendant, John Robert Davis, was claiming that there was one "Dick Davis" who was supposed to be the "contact man" between the owner, Grooms, and such co-defendant and the petitioner, Richardson. Such co-defendant, Davis, testified that "Dick Davis" was such "contact man" and that he had given his name as such to the State in a statement made by him prior to trial and shortly after he was released on bond. The State did not attempt to refute this at the trial. The question is, was the State obligated, under these circumstances, by Rule 1.220(e), to furnish the name of this alleged person to petitioner's counsel as a witness "known to the prosecuting attorney to have information which may be relevant to the offense charged" or "to any defense of the person charged." It is evident that the prosecuting attorney had knowledge of the supposed existence of one "Dick Davis" who supposedly had "information which may be relevant to the offense charged", and had this name been furnished to petitioner's counsel in response to his request for a list of the State's witnesses such counsel would have had the opportunity to seek out the witness and endeavor to learn from him what information he did have "which may be relevant to the offense charged." It is true that no such witness, "Dick Davis," was called by the State to testify, but his name should have, under the mandatory requirement of the Rule, been furnished to the petitioner. And we should not speculate as to whether there was in fact such a witness as "Dick Davis", nor whether, if so, he had information "relevant to the offense charged" or "to any defense of" the petitioner who was "charged with respect thereto." At least, petitioner's counsel should have had an opportunity before trial to investigate him and determine if any information he had would be of value to petitioner in his defense of the charge against him.
As stated in Ramirez, supra, when it is brought to the attention of the trial court during the course of the proceedings that the State has failed to comply with the Rule the Court has a discretion to determine if such failure has prejudiced the defendant on trial. But, as there noted, the trial court's discretion can be properly exercised only after the court has made an adequate inquiry into all of the surrounding circumstances. When this matter was brought to the trial court's attention at the beginning of the second day of the trial the record is completely *777 silent as to any excuse of the State for not having furnished the name of "Dick Davis" to petitioner's counsel. Furthermore, the court made no inquiry to determine whether there was in fact such a person as "Dick Davis", and, if so, whether he had and would furnish information to the petitioner which would aid him in his defense. It is entirely possible that if "Dick Davis" were found that he would refuse to help petitioner because of self-incrimination, but at least, in fairness to petitioner this was a matter that should have been inquired into by the trial court before proceeding with the trial. If necessary, he should have declared a recess to give petitioner an opportunity to locate "Dick Davis", if possible. At least, he should have offered to do so. Instead, he denied petitioner's motion for mistrial, and ordered the trial forthwith to proceed. We think in so doing he did so to the prejudice of the petitioner and that the conviction must be set aside for that reason.
We hold that this conviction must be reversed for another reason, and that is the attempt of the State to use a witness implicated in the offense charged against the petitioner and who the State knew would refuse to testify on the ground of self-incrimination.
The owner of the building which was burned was one Reuben W. Grooms. One of the co-defendants in the prosecution, John Robert Davis, testified that Grooms hired him and the petitioner, Richardson, to burn the building so that he could collect the insurance upon it. Grooms' counsel informed the prosecuting attorney before Richardson's trial that Grooms would refuse to testify on the ground of self-incrimination. Yet, the State placed Grooms on the stand and asked him if he was the owner of the building that was burned, knowing at the time that he was an accomplice in the crime. Grooms refused to testify, claiming his right against self-incrimination. Whereupon, petitioner's counsel promptly moved for a mistrial, which was denied. The Court did not instruct the jury, either then or in its closing charge, not to consider such failure of the witness to testify as evidence against the petitioner. Immediately upon Grooms' refusal to testify the prosecuting attorney called one Esther L. Sanchez to the stand, had the witness Grooms brought back into the courtroom, whereupon this witness indentified Grooms as being the owner of the building which was burned. We think this combination of fact and circumstance highly prejudicial to the petitioner. We are forced to conclude that this was a studied attempt on the part of the State to bring to the attention of the jury the refusal of Grooms to testify on his claim of the "Fifth Amendment", with the attendant inference to be drawn by the jury that not only was Grooms guilty, but also the petitioner, an alleged co-accomplice with Grooms in the crime. It is to be noted in this connection that the State did not have to resort to this tactic, for it had other evidence to establish Grooms' ownership of the building.
We feel that reason and justice require us to hold that petitioner suffered irreparable damage and injury in the eyes of the jury by Grooms being ordered to take the stand and thereby being forced to plead the Fifth Amendment. See Kaplow v. State, Fla.App., 157 So.2d 862; Farnell v. State, Fla.App., 214 So.2d 753, and cases cited therein.
We reverse and remand to the District Court of Appeal, with direction to that Court to order the trial court to grant a new trial to the petitioner.
It is so ordered.
ROBERTS, C.J., ERVIN, CARLTON, BOYD and DREW (Retired), JJ., and HALL, Circuit Judge, concur.