400 So.2d 547 (1981)
Jerry McMURTROY, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1093.
District Court of Appeal of Florida, Third District.
June 30, 1981.
*548 Bennett H. Brummer, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
McMurtroy primarily complains that the prosecutor's non-disclosure of a statement made by the defendant to Ms. Whyte, the victim of the burglary, prejudiced his right to a fair trial and that the trial court's finding to the contrary, after a Richardson hearing,[1] is unsupportable.
Initially, McMurtroy was charged with two separate burglaries and attendant robberies arising out of alleged entries into two apartments (A and B) located in the same building. Before trial, the State abandoned its prosecution of the defendant on the burglary and robbery counts associated with Apartment B. The theory of the defense was that the same person, not McMurtroy, was responsible for both burglaries and robberies. In pursuit of this defense, McMurtroy proved (a) that his fingerprints were not found in Apartment B, which was burglarized a short time before Apartment A, and (b) that, according to the tenant of Apartment A, Ms. Whyte, the burglar who thereafter entered her apartment was barehanded and asked for gloves. Presumably, the thrust of this defense was that if it were McMurtroy who burglarized Apartment B leaving no prints, he would obviously be wearing gloves when he went to Apartment A, and therefore, Whyte was mistaken when she identified McMurtroy as the bare-handed burglar who entered her apartment.
On the heels of this "I-always-wear-gloves-when-I-commit-burglaries" defense, the State recalled Whyte, who testified that McMurtroy told her that he had been in Apartment B across the hall before coming to Whyte's apartment. This statement of McMurtroy to Whyte inadvertently had not been previously disclosed to the defense. The trial court determined that its non-disclosure did not impair the defendant's ability to defend. We agree.
The fallacy of the defendant's argument that he was prejudiced by the non-disclosure is that the inference to be drawn from the statement is not that McMurtroy burglarized Whyte's apartment, but rather that the person who burglarized Whyte's apartment and made the statement to Whyte also burglarized Apartment B, the very thing which McMurtroy set out to prove. Had McMurtroy been on trial for the burglary of Apartment B, then his argument of prejudice might have some force. But here the undisclosed statement, while tending to prove that the same person committed both burglaries, had no tendency to prove that McMurtroy was that person. The proof of that, unfortunately for McMurtroy, lay in Whyte's testimony identifying McMurtroy and the unexplained presence of McMurtroy's fingerprints in Whyte's apartment.
McMurtroy's second point is that even though he failed to request that the jury be instructed that an element of the crime of robbery is the intent to permanently deprive the owner of property, the omission of such an instruction was fundamental error. In Bell v. State, 394 So.2d 979 (Fla. 1981), the Florida Supreme Court held that it is error to refuse to give such an instruction when one is requested. The question here, where the sole disputed issue was the identity of the offender, is whether it is fundamental error to omit the undisputed element of intent to permanently deprive the owner of property when instructing *549 on robbery. We hold, for the reasons and upon the authorities so fully and ably discussed in Judge Schwartz's opinion in Williams v. State, 400 So.2d 542 (Fla.3d DCA 1981), that "the omission of the intent element from a robbery instruction is not fundamental error in the absence of a real dispute on that question."
Affirmed.
NOTES
[1] Where the State violates the mandate of a discovery rule, Richardson v. State, 246 So.2d 771 (Fla. 1971), requires the trial court to conduct a hearing to determine, inter alia, whether the violation by the State was willful, substantial, and, most important, prejudicial to the defendant's ability to adequately prepare for trial.