464 So.2d 609 (1985)
Robert Scott DONAHUE, Appellant,
v.
STATE of Florida, Appellee.
No. 82-1881.
District Court of Appeal of Florida, Fourth District.
February 27, 1985.
Richard L. Jorandby, Public Defender, and Gary Caldwell, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Marlyn J. Altman, Asst. Atty. Gen., West Palm Beach, for appellee.
HURLEY, Judge.
This appeal has its genesis in an admitted discovery violation. The question is whether the trial court erred by failing to *610 conduct a Richardson hearing[1] before permitting the state to use the defendant's undisclosed oral statements for impeachment purposes. We find error and reverse.
Defendant was arrested and charged with trafficking in marijuana, a violation of section 893.135(1)(a)(1), Florida Statutes (1983). He filed a demand for discovery which, among other things, requested that the state disclose "[a]ny written or recorded statements and the substance of any oral statements, exculpatory or inculpatory, made by the accused and known to the prosecutor or his agents, together with the name and address of each witness to the statement."
The state answered with a printed form on which an "X" was typed next to the word "Yes," under the heading: "Written, recorded, and/or oral statements of Defendant." The state also gratuitously provided several police reports including one prepared by Detective Backman of the Jupiter Police Department. He had participated in a stakeout of a plane at the Lantana Airport and had observed four individuals unload marijuana into a truck driven by the defendant. Referring to the ensuing arrest, Detective Backman's report indicated that "[n]one of the subjects wished to make a written statement at this time." Backman was deposed prior to trial and, consistent with his written report, testified that none of the persons arrested made an incriminating statement.
Detective Backman's testimony differed at trial. He was prepared to testify about a conversation which he allegedly had with the defendant at the time of arrest. While searching the defendant's wallet, Backman found a receipt for the truck which was being used to haul the marijuana. According to Detective Backman, this instigated a conversation in which the defendant said "that $2500 was paid for [the truck] in cash the day prior to the aircraft being taken into custody and I [Backman] remarked about that and to that remark [the defendant] stated that he had just bought the truck and that it was for the use in this particular operation."
The state initially attempted to use this part of Detective Backman's testimony in its case-in-chief. However, after an objection by defense counsel, the state confessed error, admitting that its failure to disclose the defendant's oral statement constituted a discovery violation. Thus, the state rested its case without using the statement. The defendant then testified in his own behalf. He said that he had been paid $50 to drive the truck and explained that "[t]he job was to drive over to the Lantana Airport ... for the purpose of collecting somebody else's belongings out of an airplane so another person could repossess it." He also testified that he had purchased the truck recently after borrowing $2,500 from his father-in-law. At this point, the state attempted to impeach the defendant with the statements made to Detective Backman subsequent to the wallet search. Defense counsel objected, citing the admitted discovery violation. The state, while not retracting its confession of error, contended that the statement could be used for the limited purpose of impeaching the defendant's credibility under the doctrine announced in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The trial court agreed and, without conducting a Richardson hearing, overruled the defense objection. The defendant was convicted and brought this appeal.
The state's admission, that its failure to disclose the substance of the defendant's oral statement constituted a violation of the discovery rule, obviates the necessity to dwell on this point. We would simply repeat
that this court will not countenance trial by ambush. The state has an affirmative duty, upon demand, to furnish full discovery. In particular, when the defendant has made an oral statement, the state must do more than answer "yes" on a printed discovery form. Rule 3.220(a)(1)(iii), Fla.R.Crim.P., requires the state to divulge "the substance of any *611 oral statements ... together with the name and address of each witness to the statements." The printed discovery form now in use in the Fifteenth Judicial Circuit fails to satisfy this aspect of the rule. As the case at bar indicates, the present format of the local discovery form can be a trap for the prosecution and the defense alike; it should be corrected to assure full compliance with the rule.
Odoms v. State, 431 So.2d 1041 (Fla. 4th DCA 1983) (Hurley, J., concurring); see also Potts v. State, 399 So.2d 505 (Fla. 4th DCA 1981); Brey v. State, 382 So.2d 395 (Fla. 4th DCA 1980).
The unresolved issue in this case is whether the trial court was obligated to conduct a Richardson hearing before determining whether the state could use undisclosed evidence to impeach the defendant's credibility. To answer this question, we consider the purpose and reach of the rule announced in Richardson v. State, 246 So.2d 771 (Fla. 1971). First, the rule: If, during the course of a trial, it is brought to the attention of the court that a party has failed to comply with Rule 3.220, Fla.R. Crim.P., the court should conduct an inquiry which, at a minimum, should include "such questions as whether the violation was inadvertent or wilful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the [other party] to properly prepare for trial." Id. at 775; see also Haversham v. State, 427 So.2d 400 (Fla. 4th DCA 1983); McDonnough v. State, 402 So.2d 1233 (Fla. 5th DCA 1981).
The rule's immediate purpose is to ensure the development of a factual predicate in the record and, thus, enable the court to exercise its discretion in a considered, deliberate fashion. The rule's ultimate purpose is to ensure a fair trial by preventing "the use of surprise, trickery, bluff and legal gymnastics." Dodson v. Persell, 390 So.2d 704, 707 (Fla. 1980). To achieve these goals, the rule has been given the broadest possible reach. It applies to both parties, Bradford v. State, 278 So.2d 624 (Fla. 1973), and to all phases of the trial  rebuttal as well as the case-in-chief. Hicks v. State, 400 So.2d 955 (Fla. 1981). Moreover, the failure to conduct a Richardson hearing is per se reversible error. Cumbie v. State, 345 So.2d 1061 (Fla. 1977); but cf. Cuciak v. State, 410 So.2d 916 (Fla. 1982) (failure to conduct a Richardson hearing may be harmless error in the context of a probation revocation proceeding).
The state suggests that we should apply Harris v. New York, supra, and create an "impeachment exception" to the Richardson rule. Harris carved out a narrow exception to the rule announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It holds that statements, which would be otherwise inadmissible because of a failure to advise a defendant of his rights, are admissible for the limited purpose of impeaching a defendant's credibility. In our opinion, Harris is inapposite to the case at bar. We are not concerned with the admissibility of evidence. Rather, we must determine whether a trial court is obligated to engage in a prescribed fact-finding process before determining whether a party may use undisclosed evidence. Florida courts have consistently held that a Richardson hearing is an indispensable prerequisite to determining the admissibility of undisclosed evidence. Indeed, a strong argument can be made for the proposition that the Supreme Court's decision in Cumbie v. State, supra, precludes any exception to Richardson. And if this were not the case, we still would not alter the existing rule. The requirement to hold a Richardson hearing reinforces the discovery rules and encourages full compliance. It would be counterproductive to disregard the cause of a discovery violation. Whether it results from deliberate noncompliance or mere negligence is a significant distinction which should be considered. Moreover, fairness dictates that a trial court evaluate the impact of a discovery violation and take whatever steps are necessary to prevent irremediable prejudice.
*612 We see no reason to change a procedure that works. Therefore, we decline to create an "impeachment exception" to the Richardson rule. Instead, we opt for its uniform, consistent application to all phases of the trial. Since the court in the case at bar failed to conduct the required hearing, defendant's conviction and sentence are reversed and the cause is remanded for a new trial.
REVERSED and REMANDED.
DOWNEY and BARKETT, JJ., concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).