500 So.2d 125 (1986)
Edward SMITH, Petitioner,
v.
STATE of Florida, Respondent.
STATE of Florida, Petitioner,
v.
Edward SMITH, Respondent.
Nos. 67772, 67773.
Supreme Court of Florida.
December 24, 1986.
Rehearing Denied March 9, 1987.
Bennett H. Brummer, Public Defender, Eleventh Judicial Circuit, and Elliot H. Scherker, Asst. Public Defender, Miami, for petitioner/respondent.
Jim Smith, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., Miami, for respondent/petitioner.
BARKETT, Justice.
We have for review Smith v. State, 476 So.2d 748 (Fla. 3d DCA 1985), in which the district court certified a question as being of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
This case arises because the state failed to comply with our rules of discovery. At trial a police officer testified that the defendant had made a statement to her which had not been disclosed to defense counsel prior to trial in violation of Florida Rule of Criminal Procedure 3.220. Defendant objected and requested the hearing mandated by Richardson v. State, 246 So.2d 771 (Fla. 1971). The trial court, inexplicably, refused to hold a hearing.
On appeal, the district court held that the trial court's failure to conduct a Richardson hearing mandated reversal. However, it certified the following as a question of great public importance:
Is a new trial required when the trial court's failure to conduct a Richardson inquiry is, in the opinion of the reviewing court, harmless error?
476 So.2d at 749.
We have addressed this issue repeatedly and consistently. See Cooper v. State, 377 So.2d 1153, 1155 (Fla. 1979); Kilpatrick v. State, 376 So.2d 386, 389 (Fla. 1979); Smith v. State, 372 So.2d 86, 88 (Fla. 1979); Wilcox v. State, 367 So.2d 1020, 1023 (Fla. 1979); Cumbie v. State, 345 So.2d 1061, 1062 (Fla. 1977). Both legal and practical considerations dictate, once again, an affirmative answer to the question posed.
First, from a practical perspective, the rule of Richardson and its progeny works effectively and accommodates the various competing interests. The command of Rule 3.220(a) is simple, clear, and direct. *126 The state is required to disclose and provide discovery. If the state fails to discharge its duty in this regard, the trial court must inquire into the circumstances of the discovery violation and its possible prejudice to the defendant. This process contains enormous flexibility by providing a full panoply of remedies which a judge may apply if a discovery violation has occurred, including, if the evidence warrants, finding no prejudice or "harmless error" and proceeding with the trial.
We see no evidence that the clear dictates of this integral component of Florida law have imposed any significant hardship on the bench or bar or have worked any injustice. On the contrary, the requirement that a trial court merely listen and evaluate any claim of prejudice accompanied by the minor delay which most hearings or inquiries will impose on a trial is more than justified by the assurance of compliance with our rules and requirements of due process.
Second, legal considerations also mandate our continued adherence to Richardson and its progeny. The certified question in this case misapprehends the very purpose of a Richardson hearing, which is precisely to determine if a violation is, in fact, harmless. One cannot determine whether the state's transgression of the discovery rules has prejudiced the defendant (or has been harmless) without giving the defendant the opportunity to speak to the question. We repeat what the court made clear in Wilcox. A reviewing court cannot determine whether the error is harmless without giving the defendant the opportunity to show prejudice or harm. 367 So.2d at 1023. In Wilcox, the state sought to resist reversal by asserting that "no prejudice resulted because the trial court instructed the jury to disregard the [previously undisclosed] statement." Id. at 1022. In rejecting this argument, this Court explained that the question of "prejudice" in a discovery context is not dependent upon the potential impact of the undisclosed evidence on the fact finder but rather upon its impact on the defendant's ability to prepare for trial:
Respondent misapprehends the nature of the prejudice Cumbie and Richardson seek to remedy. The purpose of a Richardson inquiry is to ferret out procedural, rather than substantive, prejudice. In deciding whether this type of prejudice exists in a given case, a trial judge must be cognizant of two separate but interrelated aspects. First, the judge must decide whether the discovery violation prevented the defendant from properly preparing for trial. In this case, had petitioner known what the officer was going to say, he might have successfully excluded the testimony before trial. At the very least, advance knowledge would have given petitioner time to gather rebuttal evidence. On the other hand, close scrutiny might have revealed that the statement had no bearing on petitioner's defense. Without a Richardson inquiry, the trial court was in no position to make an accurate judgment as to these possibilities.
Id. at 1023. See also Smith, 372 So.2d at 88 (rejecting argument that post-trial inquiry would suffice because a Richardson inquiry after remand from the appellate court is reduced to a mere guessing game). If the "trial court [is] in no position to make an accurate judgment" without giving the defendant the opportunity to show prejudice, how then can a reviewing court do so? As this Court expressly held in Cumbie, "[a] review of the cold record is not an adequate substitute for a trial judge's determined inquiry into all aspects of the state's breach of the rules." 345 So.2d at 1062. It is not adequate because the error committed is the preclusion of the very evidence necessary to make a judgment on the existence of prejudice or harm.
The state is essentially asking us to disregard all concern for procedural prejudice and abandon Richardson. We can see no justification for doing so.
Alternatively, the state requests that we limit Richardson and hold that it does not apply to the admission of a previously undisclosed statement on rebuttal. The *127 admission of the statement as rebuttal evidence does not make it any more appropriate than admitting it during direct examination. There is neither a "rebuttal" nor an "impeachment" exception to the Richardson rule. See Hicks v. State, 400 So.2d 955, 956 (Fla. 1981); Kilpatrick, 376 So.2d at 388; Donahue v. State, 464 So.2d 609, 612 (Fla. 4th DCA 1985).
Accordingly, we answer the certified question in the affirmative, and approve the decision of the court below.
It is so ordered.
ADKINS, BOYD, OVERTON and EHRLICH, JJ., concur.
McDONALD, C.J., dissents with an opinion, in which SHAW, J., concurs.
McDONALD, Chief Justice, dissenting.
Because I believe we should no longer adhere to a per se rule of reversibility when trial courts fail to hold hearings pursuant to Richardson v. State, 246 So.2d 771 (Fla. 1971), I dissent. The case at bar involves a prosecution for burglary and grand theft. During trial, Detective Rene Heizen, lead investigator in the case, testified concerning her questioning of Smith regarding the burglary. During this testimony, the following transpired:
Q: What did you tell Mr. Smith?
A: I advised him that I was looking into this case, and that I had a couple of questions to ask him, that he didn't need to speak with me if he didn't care to.
* * * * * *
Q: What, specifically, did you ask the Defendant in this case?
A: I asked him if he had ever been around that house recently, the last month or so, and he indicated that he had not.
Q: I have nothing further.
MR. LANDAU: I have an objection and would like to go side-bar.
Defense counsel objected both because Smith had received insufficient Miranda warnings and because the statement had not been supplied to the defense during discovery. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After excusing the jury, a rather lengthy discussion took place between the court and counsel. During this discussion, the defense acknowledged that it knew about the conversation between Smith and Heizen. In fact, the defense acknowledged Heizen had given a deposition concerning the substance of the conversation. The defense, however, argued that it was unaware of the particular statement about which Heizen had testified. The trial court denied defense counsel's request for a Richardson hearing, but ruled that Smith had received insufficient Miranda warnings before he made the statement. Accordingly, when the court recalled the jurors, it instructed them to disregard the last portion of Heizen's testimony. The court refused, however, to hold a Richardson hearing to determine the admissibility of Smith's statement for rebuttal purposes.
Subsequently, Smith took the stand and testified that he had gone to the burglarized house a few days before the burglary to check on a boat for a friend. During rebuttal, the state recalled Heizen, whereupon she once again testified that Smith had told her that he had not been to the house during the last month. The defense counsel renewed its request for a Richardson hearing, and the court again denied the request. The jury found Smith guilty of burglary and second-degree grand theft, and Smith received a sentence of seven years imprisonment.
On appeal the third district ruled, inter alia, that Cumbie v. State, 345 So.2d 1061 (Fla. 1977), compelled reversal even though the trial court committed only harmless error when it failed to hold a Richardson hearing. Cumbie applied the per se reversal rule to a trial court's failure to conduct a Richardson inquiry. By approving the instant decision of the district court and answering the certified question in the affirmative, the majority is not only holding form sacrosanct at the expense of substance, but is also perpetuating a distortion *128 of the goals that our original decision in Richardson intended to further.
This Court decided Richardson in order to effectuate the requirements of Florida Rule of Criminal Procedure 1.220, now rule 3.220. Among other things, this rule requires that, upon written request filed by the defense, the prosecution must furnish a list of all witnesses whom the prosecuting attorney knows to have relevant information concerning the charged offense as well as the substance of any oral statements made by the accused.[1] The content of rule 3.220 was no doubt strongly influenced by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Whitfield v. State, 479 So.2d 208, 215 (Fla. 4th DCA 1985). Brady involved a prosecutor's failure to inform the defense of a codefendant's extrajudicial confession. 373 U.S. at 84, 83 S.Ct. at 1195. Brady stands for the proposition that the nondisclosure of evidence favorable to the defense, if the defense has requested such information, results in a violation of due process when the suppressed evidence is material[2] to the defendant's guilt or punishment. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985); Brady, 373 U.S. at 87, 83 S.Ct. at 1196; Whitfield, 479 So.2d at 215. The purpose of the Brady rule is not to displace the adversary system as the primary means of uncovering the truth; rather, the paramount goal is to guard against miscarriages of justice. Bagley, 105 S.Ct. at 3380. Therefore, unless the prosecutor's omission deprives the defendant of a fair trial, there is no constitutional violation requiring the verdict to be set aside. Id.; United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). Consequently, the United States Supreme Court has deemed it appropriate to apply the harmless error rule adopted in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to Brady violations, thereby preventing the automatic reversal of convictions where the discovery violation was harmless beyond a reasonable doubt. See Bagley, 105 S.Ct. at 3381-82; Chapman, 386 U.S. at 22, 87 S.Ct. at 827.
In State v. Murray, 443 So.2d 955 (Fla. 1984), this Court adopted the harmless error standard set forth in Chapman and applied it to prosecutorial misconduct during closing arguments. In so doing, we noted that prosecutorial misconduct or overzealousness alone does not warrant automatic reversal of a conviction unless the errors involved are so basic to a fair trial that they can never be treated as harmless. 443 So.2d at 956. In Richardson we extended the harmless error rule to the failure of a prosecutor to disclose the identity of a witness having knowledge of certain facts relevant to the charged offense.[3] In making that extension we stressed that while rule 1.220, now 3.220, was designed to furnish the accused with information that would legitimately aid in his defense, the rule was never intended to furnish a defendant with a procedural device to escape justice. 246 So.2d at 774. On the other hand, Richardson also states that although the trial court has discretion in determining whether the state's noncompliance with the discovery rules resulted in harm or prejudice to the defendant, such discretion could be exercised only after the court made an adequate inquiry into all of the surrounding circumstances. Id. at 775.
Based on Richardson, a trial court's failure to hold such an inquiry has been treated as per se reversible error. E.g., Zeigler v. State, 402 So.2d 365, 372 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); Cooper v. State, 377 So.2d 1153, 1155 (Fla. 1979); Wilcox v. *129 State, 367 So.2d 1020, 1023 (Fla. 1979); Cumbie, 345 So.2d at 1062; Hickey v. State, 484 So.2d 1271, 1273 (Fla. 5th DCA), review denied, 492 So.2d 1335 (Fla. 1986); Raffone v. State, 483 So.2d 761, 763 (Fla. 4th DCA), dismissed, 491 So.2d 281 (Fla. 1986); Smith v. State, 476 So.2d 748, 749 (Fla. 3d DCA 1985); R.R. v. State, 476 So.2d 218, 218-19 (Fla. 3d DCA 1985); Lavigne v. State, 349 So.2d 178, 179 (Fla. 1st DCA 1977). Our ruling in Richardson was grounded largely upon this Court's distaste for trial by ambush. Cuciak v. State, 410 So.2d 916, 917 (Fla. 1982). Richardson, however, has created an anomaly in the law, whereby the harmless error standard is applied to a substantive due process violation, but a technical violation of a rule of criminal procedure results in automatic reversal. Moreover, Richardson effectively made Florida's harmless error statute inapplicable as a matter of law to situations where trial judges inadvertently fail to conduct such inquiries. Lavigne, 349 So.2d at 180 (Boyer, C.J., concurring).
Some constitutional rights are so basic to a fair trial that their violation can never be treated as harmless error. Chapman, 386 U.S. at 23, 87 S.Ct. at 827. Yet, as we have noted previously:
"All 50 States have harmless-error statutes or rules,... [which] serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."
State v. Marshall, 476 So.2d 150, 152 (Fla. 1985) (quoting Chapman, 386 U.S. at 22, 87 S.Ct. at 827). A reviewing court has the duty to consider the trial record as a whole and to ignore even constitutional errors that are harmless beyond a reasonable doubt. United States v. Hasting, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983); State v. DiGuilio, 491 So.2d 1129, 1134 (Fla. 1986); Marshall, 476 So.2d at 152; Murray, 443 So.2d at 966. Per se rules of reversal are nothing more than rules of judicial convenience which allow courts to retreat from this responsibility. DiGuilio, 491 at 1135; Marshall, 476 So.2d at 152.
The majority contends that Richardson and its progeny satisfactorily accomodate the various competing interests involved. I cannot agree. The goal of the harmless error rule is to conserve not only public funds, but also the judicial process itself. Already overburdened trial court calendars should be preserved for legitimate disputes, not be clogged further by needless reversals and retrials. Kotteakos v. United States, 328 U.S. 750, 760, 66 S.Ct. 1239, 1245, 90 L.Ed. 1557 (1946). Moreover, the reversal of a conviction entails other substantial societal costs apart from the strain placed on the judicial process. Often, victims are asked to relive their disturbing experiences. Additionally, the passage of time, erosion of memory, and dispersion of witnesses may render retrial difficult or even impossible. United States v. Mechanik, ___ U.S. ___, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986); Morris v. Slappy, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983); Engle v. Issac, 456 U.S. 107, 127-28, 102 S.Ct. 1558, 1571-72, 71 L.Ed.2d 783 (1982). Indeed, while in theory reversal entitles a defendant only to a retrial, in practice it may in some cases reward the guilty with complete freedom from prosecution. Mechanik, 106 S.Ct. at 942; Engle, 456 U.S. at 128, 102 S.Ct. at 1572. Even if the defendant is convicted in a second trial, the intervening delay significantly compromises society's interest in the prompt administration of justice and impedes the accomplishment of the long-term objectives of deterrence and rehabilitation. Mechanik, 106 S.Ct. at 943; Engle, 456 U.S. at 127 n. 32, 102 S.Ct. at 1571 n. 32; Schneckloth v. Bustamonte, 412 U.S. 218, 262, 93 S.Ct. 2041, 2065, 36 L.Ed.2d 854 (1973) (Powell, J., concurring). Although these societal costs are acceptable and necessary when an error in the first proceeding *130 deprives a defendant of a fair determination of innocence or guilt, they are not acceptable when the error in no way affects the outcome of the trial. Mechanik, 106 S.Ct. at 943. Both the individual accused and society as a whole have an interest in assuring that at some point the litigation will come to an end. Engle, 456 U.S. at 127, 102 S.Ct. at 1571. See Brickel v. Brickel, 122 So.2d 37, 38 (Fla. 2d DCA 1960) (one purpose of courts is to terminate litigation).
A litigant is entitled to an objective consideration of all evidence properly before the court, free from harmful error. He is not, however, entitled to a perfect trial, free from all possible error. Stang v. State, 421 So.2d 147, 149 (Fla. 1982); Hall v. State, 420 So.2d 872, 874 (Fla. 1982); Hoffman v. State, 397 So.2d 288, 290 (Fla. 1981); Lackos v. State, 339 So.2d 217, 219 (Fla. 1976). The criminal discovery rules were never intended to furnish a defendant with a procedural device to delay litigation or escape justice. Dodson v. Persell, 390 So.2d 704, 707 (Fla. 1980); Richardson, 246 So.2d at 774; Sykes v. State, 329 So.2d 356, 358 (Fla. 1st DCA 1976). As courts have noted in the past, the purpose of a Richardson inquiry is to ferret out procedural, rather than substantive, prejudice. Wilcox, 367 So.2d at 1023; Raffone, 483 So.2d at 763. Procedure, however, should not be a fetish and we should not commit ourselves to procedure for procedure's sake. R.R., 476 So.2d at 219. While the Richardson inquiry serves an important role in protecting the rights of defendants, so do the bulk of Florida's criminal procedure rules. Courts, however, do not generally treat violations of procedural rules as grounds for reversal of a conviction unless the record discloses that the noncompliance resulted in prejudice to the defendant. See Ross v. State, 474 So.2d 1170, 1173 (Fla. 1985) (violation of Fla.R.Crim.P. 3220); Leeman v. State, 357 So.2d 703, 705 (Fla. 1978) (violation of Fla.R.Crim.P. 3.220); Richardson, 246 So.2d at 774 (violation of Fla.R.Crim.P. 3.220); State v. Bruno, 107 So.2d 9, 15 (Fla. 1958) (vaguely worded charging document); Clair v. State, 406 So.2d 109, 110 (Fla. 5th DCA 1981) (violation of Fla.R.Crim.P. 3.220); Miller v. State, 373 So.2d 377, 378 (Fla. 2d DCA 1979) (violation of Fla.R.Crim.P. 3.220); Cannon v. State, 317 So.2d 459, 460 (Fla. 1st DCA 1975) (violation of Fla.R.Crim.P. 3.170(j)); Broeck v. State, 317 So.2d 100, 100 (Fla. 1st DCA 1975) (violation of Fla.R. Crim.P. 3.170(j)); Vena v. State, 295 So.2d 720, 722 (Fla. 3d DCA 1974) (violation of Fla.R.Crim.P. 3.220), cert. denied, 307 So.2d 184 (Fla. 1975); Pizzo v. State, 289 So.2d 26, 27 (Fla. 2d DCA 1974) (violation of Fla.R.Crim.P. 3.220).
To attain true justice, the written law must be seasoned with a proper amount of common sense. State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904, 910 (Fla. 1976). Accordingly, courts generally have not permitted form to override substance or procedural technicalities to defeat fairness or justice. McGee v. State, 438 So.2d 127, 133 (Fla. 1st DCA 1983). Our continuing adherence to the per se rule in Richardson, however, has mandated that the courts of this state do precisely that. The majority states that it sees no evidence that the per se reversal rule has imposed any significant hardships on courts or has otherwise worked any injustices. Indeed, the majority opinion inexplicably maintains that the Richardson rule allows courts "enormous flexibility" in dealing with discovery violations. Florida's district courts seem to disagree. These courts have increasingly chafed under the yoke Richardson has imposed upon them. See Hall v. State, 477 So.2d 572, 576 (Fla. 4th DCA 1985); R.R., 476 So.2d at 220; Lavigne, 349 So.2d at 180-81 (Boyer, C.J., concurring). In the words of the Third District Court of Appeal: "[W]e are most disquieted by the rule of automatic Richardson reversability  which, for reasons which we frankly do not understand, places a mere procedural deficiency into a protected status not occupied by errors which concern the most serious of constitutional rights." R.R., 476 So.2d at 220 (footnotes omitted). I agree. Richardson questions involve deviations from a court-imposed *131 procedural step in the administration of the discovery process, which is itself created only by a procedural rule and is not constitutionally mandated. R.R. 476 So.2d at 219 n. 4. In my view, the Richardson anomaly is unwarranted.
Although courts should not lightly modify precedents as well entrenched as Richardson, stare decisis has less vitality in the area of practice and procedure than in the area of substantive law. Moragne v. States Marine Lines, Inc., 398 U.S. 375, 403-05, 90 S.Ct. 1772, 1789-90, 26 L.Ed.2d 339 (1970); Fields v. Zinman, 394 So.2d 1133, 1136 (Fla. 4th DCA 1981), review dismissed, 417 So.2d 329 (Fla. 1982). Moreover, as we reasoned in Cottrell v. Amerkan, 160 Fla. 390, 393-94, 35 So.2d 383, 384-85 (1948), courts need not apply legal principles deduced from decisions relating to procedure when the reasons for the application fail. We should utilize a rule of reason. Stare decisis should not be applied when doing so would defeat justice. Wallace v. Luxmoore, 156 Fla. 725, 729, 24 So.2d 302, 304 (1946).
The application of a per se rule of reversal is an inappropriate tool with which to protect the discovery rights of defendants. This is not to say that courts should not be required to conduct Richardson inquiries when potential discovery violations are brought to the trial judge's attention. As this Court has stated before, "[a] review of the cold record is not an adequate substitute for a trial judge's determined inquiry into all aspects of the state's breach of the rules." Cooper, 377 So.2d at 1155; Cumbie, 345 So.2d at 1062. Further, we should in no way later the requirement that the inquiry thoroughly examine all the surrounding circumstances and otherwise meet all the specified requirements set out in Richardson and its progeny. Nevertheless, I simply see no justification for treating the procedural error of failing to make a Richardson inquiry as per se reversible when the underlying substantive Brady violation is judged under the harmless error standard.
The harmless error test is a rigorous standard that requires a court to find beyond a reasonable doubt that the error had no effect on the verdict. It also places the burden of showing the error's harmlessness on the state. DiGuilio, 491 So.2d at 1139. Thus, the harmless error test fully protects the rights of defendants from improper actions on the part of the prosecutor during discovery.
Accordingly, I would disapprove the decision of the district court and answer the certified question in the negative, thereby modifying Richardson and rejecting the per se rule of reversal for the failure to hold a Richardson hearing. Because the third district did not apply the precise standard that we recently adopted in DiGuilio, however, I would remand for a determination of whether the error was harmless beyond a reasonable doubt.
SHAW, J., concurs.
NOTES
[1] Fla.R.Crim.P. 3.220(a)(1)(i) & (iii).
[2] The materiality requirement set forth in Brady was further refined in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and United States v. Bagley, 105 S.Ct. 3375 (1985).
[3] In Richardson we also took note of Florida's harmless error statute, § 924.33, Fla. Stat. (1969), which prohibits the appellate courts of this state from reversing judgments in criminal proceedings solely because of errors that do not affect the substantive rights of the parties involved. 246 So.2d at 774.