649 So.2d 219 (1994)
John C. BARRETT, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 78743.
Supreme Court of Florida.
November 23, 1994.
Rehearing Denied February 6, 1995.
*220 James B. Gibson, Public Defender and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee/cross-appellant.
PER CURIAM.
John C. Barrett appeals his convictions for first-degree murder and conspiracy to commit murder and the attendant death sentences. The State has filed a cross-appeal on one issue. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We reverse the convictions, vacate the sentences, and remand with instructions as set forth below.
Barrett was charged with four counts of first-degree murder and one count of conspiracy to commit murder for the August 1990 murders of four men in Floral City, Florida. The jury found Barrett guilty on all counts and recommended life sentences as to each murder.
The trial judge found five aggravating circumstances: previous conviction of another capital felony based upon the contemporaneous murders; the murders were committed for the purpose of avoiding a lawful arrest, for pecuniary gain, and to disrupt or hinder the lawful exercise of a governmental function; and the murders were committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. § 921.141(5)(b), (e), (f), (g), (i), Fla. Stat. (1989). The judge found the statutory mitigating circumstance of no significant history of prior criminal activity. § 921.141(6)(a), Fla. Stat. (1989). The judge also found a number of nonstatutory mitigating circumstances: Barrett had a good potential for rehabilitation; he was a good parent, son, and brother to his family; he had served in the military; he had recently converted to Christianity; and a co-defendant had received four consecutive life terms for his involvement in the crimes. The judge concluded that the aggravating circumstances outweighed the mitigating and overrode the jury's recommendation of life.
Barrett raises seven issues on direct appeal: 1) that the trial court erred in preventing Barrett from introducing into evidence the tapes of his interrogation; 2) that a discovery violation by the State denied him a fair trial and due process; 3) that override of the jury's recommendation of life was improper; 4) that the cold, calculated, and premeditated aggravating factor was not properly found; 5) that the evidence does not support the finding that the murders were committed for the purpose of avoiding a lawful arrest; 6) that the evidence does not support the finding that the murders were committed to disrupt or hinder the lawful exercise of a governmental function; and 7) that Florida's death penalty statute is unconstitutional on its face and as applied. On cross-appeal, the State claims that the trial court should have found that the heinous, atrocious, or cruel aggravating factor applied to the murders.
We find that the court's failure to conduct a Richardson[1] hearing to inquire about a discovery violation by the State requires reversal of Barrett's convictions. We do not address the other guilt phase issue.
In issue 2, Barrett argues that the State committed a discovery violation related to mid-trial finger and palm print comparisons conducted by the State. Barrett testified at trial that Scott Burnside had approached him to participate in the conspiracy that resulted in the four murders. Barrett also testified that although he was present at the scene Burnside and another unidentified individual actually committed the murders. Upon cross-examination by defense counsel during the State's case, the State's fingerprint expert stated that he had not compared Burnside's prints to the forty-four prints found at the crime scene. Although the expert was listed as a potential defense witness, the defense rested without calling him. The State then recalled the expert as a rebuttal *221 witness. The expert testified that a subsequent comparison of Burnside's prints revealed no match with the prints from the murder scene. On cross-examination by the defense, the expert indicated that he had received Burnside's prints after his previous testimony. Defense counsel then notified the court that the expert's testimony constituted a discovery violation, moved for a mistrial, and asked the judge to inquire into the circumstances surrounding the expert's testimony. The judge denied the motion for a mistrial and deferred inquiry into the alleged discovery violation by stating, "Well, we can do all that later, but I don't see any reason to do that at this time."
After the State concluded its case in rebuttal and the defense rested, the court heard argument relating to the discovery violation. The State acknowledged that it had obtained Burnside's palm prints the previous day and had not provided them to the defense. However, it is difficult to determine from the record whether Burnside's fingerprints had been available to the defense. At one point the state attorney said: "The fingerprints, Your Honor, as I understand it, have always been available at least what they had." Only minutes later, however, the state attorney told the judge that he would "have to go back and look for [Burnside's] fingerprints, to see whether or not we gave them to [the defense]." From defense counsel's statements to the court, it appears that the State had in some way indicated it was trying to locate copies of Burnside's prints from an earlier arrest and probation.[2] The court made no further inquiry into the prints or the alleged discovery violation, but instead ruled that the defendant's objection was untimely.
After reviewing the record, we conclude that the defendant's objection was timely. The State only asked three questions pertinent to the prints (were you asked to compare Burnside's prints; did you do that; and what was the result) during the expert's rebuttal testimony. On cross-examination, defense counsel asked questions only to clarify when the prints had been given to the expert and who had obtained the prints. After clarifying these circumstances, defense counsel immediately notified the court that a discovery violation had occurred, moved for a mistrial, and asked the court to inquire about the prints. This sequence of events satisfied the requirements of the contemporaneous objection rule as it was sufficiently timely to allow the court to consider the motion for mistrial, to inquire about the discovery violation, and to be able to fashion a remedy short of mistrial if needed to avert prejudice to the defendant.
The State argues that defense counsel waived this issue by inquiring into the circumstances of the print comparison on cross-examination rather than objecting at the instant that the expert revealed his comparison. We find the State's argument disingenuous, especially in light of the fact that the State failed to notify the defense about the recently obtained prints and the comparison before the expert testified. Defense counsel can hardly be faulted for not immediately comprehending that the State had withheld this information or that the expert was testifying about something that occurred after he had previously testified. This is precisely the type of trial by ambush that Florida's discovery rule is designed to prevent. See Cuciak v. State, 410 So.2d 916, 917 (Fla. 1982) ("A basic philosophy underlying discovery is the prevention of surprise and the implementation of an improved fact finding process."); Kilpatrick v. State, 376 So.2d 386, 388 (Fla. 1979).
When a defendant elects to participate in the discovery process, the State has an ongoing duty to disclose and provide discovery. Fla.R.Crim.P. 3.220(j).[3] When the *222 State's failure to comply with the rules of discovery is brought to the court's attention, the court must conduct a Richardson hearing to determine if that failure has prejudiced the defendant. While the trial court has discretion to determine whether a discovery violation would result in harm or prejudice to the defendant, "the court's discretion can be properly exercised only after the court has made an adequate inquiry into all of the surrounding circumstances." Richardson v. State, 246 So.2d 771, 775 (Fla. 1971). Moreover, the Richardson rule applies to evidence submitted during rebuttal. Smith v. State, 500 So.2d 125, 126-27 (Fla. 1986).
While a Richardson hearing is only required where the court determines that a discovery violation has occurred, Justus v. State, 438 So.2d 358, 365 (Fla. 1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1332, 79 L.Ed.2d 726 (1984), the record here clearly shows that the State committed a discovery violation by not disclosing Burnside's palm prints to the defendant. The court specifically recognized this failure.[4] The State admitted it as well and even suggested that the defense could be given time to obtain a latent print expert to examine the palm prints if prejudice was shown.
It is unclear whether a discovery violation occurred as to the fingerprints. The judge made no inquiry into the State's seemingly inconsistent responses to the defense allegations regarding the fingerprints. Instead, the judge abruptly ended the discussion by ruling that the defendant's objection was untimely. At the very least, the judge should have made an inquiry for the record and determined whether this constituted a violation or not.
However, there is no question that the discovery violation relating to the palm prints triggered the need for a Richardson hearing in this case. The trial court's investigation of this question did not even approximate the full inquiry that Richardson requires.[5] While the court inquired into the circumstances of the discovery violation, there was no inquiry into its possible prejudice to the defendant. As this Court explained in Smith, "[o]ne cannot determine whether the state's transgression of the discovery rules has prejudiced the defendant (or has been harmless) without giving the defendant the opportunity to speak to the question." 500 So.2d at 126.
Had the judge conducted an adequate inquiry, he could have chosen from a "panoply of remedies ... including, if the evidence warrants, finding no prejudice or `harmless error' and proceeding with the trial." Id. at 126. However, absent such an inquiry, the record is devoid of "the very evidence necessary to make a judgment on the existence of prejudice or harm." Id. "A review of the cold record is not an adequate substitute for a trial judge's determined inquiry into all aspects of the state's breach of the rules." Cumbie v. State, 345 So.2d 1061, 1062 (Fla. 1977). In the instant case, the judge foreclosed the necessary inquiry when he ruled that the defendant's objection was untimely and proceeded with the trial. This failure to conduct the required Richardson hearing mandates reversal of Barrett's convictions. Id; Smith
Under the continuing discovery obligation, it was incumbent on the State to disclose the newly discovered Burnside prints to the defense. Absent such disclosure, when the violation was brought to the judge's attention, he was required to conduct a complete Richardson hearing and provide a full record for our review. If the judge had determined *223 that Barrett was prejudiced by the nondisclosure, he could have fashioned an appropriate remedy. The remedy could have been as suggested by the State: order a recess to allow a defense latent print expert to examine the prints. Without these procedures, we are required to reverse the convictions.
Even though this guilt phase error requires reversal of Barrett's convictions, the circumstances of this case necessitate consideration of one issue relating to the sentence imposed by the trial court. Barrett challenges the trial court's decision to override the jury's life recommendation on the first-degree murder charges. To sustain a jury override, this Court must conclude that the facts suggesting a sentence of death are "so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). In other words, we must reverse the override if there is a reasonable basis in the record to support the jury's recommendation of life. E.g., Scott v. State, 603 So.2d 1275, 1277 (Fla. 1992); Ferry v. State, 507 So.2d 1373, 1376 (Fla. 1987).
The facts in this record show a reasonable basis on which the jury could have concluded that life imprisonment was the appropriate sentence. The jury could have reasonably concluded that Barrett was not the person who actually committed the murders, and that Burnside had committed the murders with the help of someone other than Barrett. Conflicting evidence on the identity of the actual killer can form the basis for a recommendation of life imprisonment. Cooper v. State, 581 So.2d 49, 51 (Fla. 1991). While the sentencing order specifically recognized that Barrett was "consuming alcohol at the time of the killing," it also dismissed this as a mitigating circumstance because the drinking "may have been to fortify [Barrett's] resolve" or to "bathe [his] conscience." While the trial judge rejected intoxication as a mitigating circumstance, the jury could have given more credence to the evidence that Barrett had been drinking on the day of the murders, that his drinking had escalated in the months that preceded the murders, and that his drinking was a result of the pressure he believed was being exerted on him to commit the murders. See Stevens v. State, 613 So.2d 402, 403 (Fla. 1992); Cheshire v. State, 568 So.2d 908, 911 (Fla. 1990). One of Barrett's co-defendants received life terms for his involvement in these murders. This Court has recognized that evidence of disparate treatment of principals in a contract murder can serve as a reasonable basis for a jury's recommendation of life. Fuente v. State, 549 So.2d 652, 658 (Fla. 1989); Brookings v. State, 495 So.2d 135, 143 (Fla. 1986). The jury also may have considered in mitigation Barrett's lack of criminal history, Caillier v. State, 523 So.2d 158, 161 (Fla. 1988), his potential for rehabilitation and positive personality traits, Stevens v. State, 552 So.2d 1082, 1086 (Fla. 1989), and his capacity to form loving relationships with his family and friends, Scott, 603 So.2d at 1277. Thus, we find that the trial court erred in overriding the jury's life recommendation.
"[W]hen it is determined on appeal that the trial court should have accepted a jury's recommendation of life imprisonment pursuant to Tedder, the defendant must be deemed acquitted of the death penalty for double jeopardy purposes." Wright v. State, 586 So.2d 1024, 1032 (Fla. 1991). Thus, upon retrial Barrett may not again be subjected to the death penalty for this crime.[6]
Accordingly, we reverse the convictions, vacate the death sentences, and remand for proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
McDONALD, Senior Justice, concurs in part and dissents in part with an opinion.
McDONALD, Senior Justice, concurring in part and dissenting in part.
At best, the failure to have a full-blown Richardson hearing resulted in the admission of rebuttal testimony that the fingerprints *224 of a person claimed by Barrett to have committed the murders were not found at the crime scene. Because of the discovery violation this testimony may have been inadmissible. This fact should not be sufficient error to cause a retrial.
The improper admission of evidence is subject to a harmless error analysis. The admitted testimony could not have affected the jury's determination of Barrett's guilt. Barrett admitted being present at the scene. The fact that someone else may have done the actual killing did not absolve Barrett. He was convicted also of conspiracy to murder and the record clearly supports the jury's conclusion that he played a significant role in the four murders. The extent of his participation may affect the penalty, but because we are reducing the penalty to life sentences, the error, if any, is also harmless on the penalty.
Barrett clearly was not prejudiced by the admission of the rebuttal testimony and is not entitled to a new trial because of this issue.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] Burnside disappeared after the murders and had not been located by the police at the time of trial.
[3] Florida Rule of Criminal Procedure 3.220(j) provides:

If, subsequent to compliance with the rules, a party discovers additional witnesses or material that the party would have been under a duty to disclose or produce at the time of the previous compliance, the party shall promptly disclose or produce the witnesses or material in the same manner as required under these rules for initial discovery.
[4] The record reveals the following exchange between the court and the state attorney about Burnside's palm prints:

THE COURT: For the record, we have the palm prints, were obtained by the State?
[STATE ATTORNEY]: Yes, sir.
THE COURT: And they were not provided to the defense?
[STATE ATTORNEY]: Yes, sir.
THE COURT: And why was it they were not provided?
[STATE ATTORNEY]: Because  We didn't have the palm prints until, I think, it was yesterday.
[5] "The inquiry should ascertain at the least whether the state's violation was inadvertent or wilful, whether the violation was trivial or substantial, and most importantly, what effect, if any, it had upon the defendant's ability to prepare for trial." Wilcox v. State, 367 So.2d 1020, 1022 (Fla. 1979); Richardson, 246 So.2d at 775.
[6] Based upon our conclusion that Barrett may not be subjected to the death penalty upon retrial, we need not address the other penalty phase issues raised by Barrett or by the State on cross-appeal.