585 So.2d 278 (1991)
Donnie Gene CRAIG, Appellant,
v.
STATE of Florida, Appellee.
No. 72591.
Supreme Court of Florida.
September 5, 1991.
*279 Michael L. Sullivan, Okeechobee, for appellant.
Robert A. Butterworth, Atty. Gen. and Carol Cobourn Asbury, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Craig appeals his conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction, reverse the sentence, and remand for imposition of a life sentence as recommended by the jury.
When Clifton Ellis failed to make routine appearances, a neighbor, Jack Deitz, entered Ellis's home in Okeechobee on March 31, 1987, and found his body slumped on the floor at the foot of the bed. He had been stabbed a number of times. His empty wallet and two shoeprints marked in blood were present at the scene. Ellis's blue and white car was missing and when it was found later that day in the parking lot of a local bar, a partial latent print on the rearview mirror was identified as matching that of Donnie Craig. Craig was subsequently arrested at his home for violation of probation, and a pair of tennis shoes was seized at that time. At the police station, Craig was read his rights and signed a waiver form. He told police that he had not seen Ellis for a month and a half and *280 had not been in Ellis's car for a year and a half. He said the tennis shoes were his and he had not loaned them to anyone.
Craig's motion to suppress his statements and the shoes was denied. At trial, Deitz testified that he had last seen Ellis at 4 p.m. on March 30 and had seen Ellis's car parked in the garage that evening. Laura Mayo testified that Craig arrived at her apartment in West Palm Beach at about 11 p.m. or 12 a.m. on the night of March 30 and gave her a hundred-dollar bill and two watches to buy cocaine. She identified a checkbook, insurance papers, and a .25-caliber pistol, all belonging to Ellis, as being present in the blue and white car that Craig drove that night. Craig left at daybreak. A ballistics expert testified that one spent shell casing removed from Ellis's car and three casings found in a residence in West Palm Beach on March 31 were fired by Ellis's .25-caliber pistol. Detective George Miller testified that Craig's left tennis shoe made the imprints found in blood at the scene. Craig presented no evidence during the guilt phase. The jury found him guilty of felony murder in the first degree and recommended life imprisonment. The judge imposed the death penalty, finding two aggravating circumstances[1] and no mitigating.

GUILT PHASE
Over objection, the state introduced evidence showing that on the night of March 30 Craig procured and used cocaine. The state claims this was necessary in order to give a meaningful account of the murder. The use of drugs, however, was unrelated to the murder and the evidence should have been excluded. We find the error harmless in light of other substantial evidence of guilt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).[2] Craig claims that evidence of shell casings found at a residence in West Palm Beach on the day following the murder was irrelevant and should have been excluded. The shell casings, however, were fired by Ellis's gun and placed the gun in West Palm Beach when Craig was there. We find no error.
Craig claims that the evidence was insufficient to support a finding of premeditation. He was convicted, however, of felony murder, and this is supported by competent substantial evidence. Craig's claim that his statements following arrest were obtained in violation of his constitutional rights is without merit. He made the statements after being told that he was a suspect in the murder. He was read his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and signed a written waiver. We find no error.
At the time Craig was arrested at his home, he had just awoken. As he was dressing, his mother handed the policeman Craig's shoes so the officer could, in turn, pass them to Craig. As he handled the shoes, the officer noticed that their treads were similar to the bloody prints found at the murder scene; he seized them as evidence. Craig claims the seizure was unlawful because the officer had no warrant and lacked probable cause. The shoes, however, were evidence relating to the crime and were in plain view. We find no error. See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).
When defense counsel filed a motion for statement of particulars, requesting the date, time and place of the offense, the trial court denied the motion, informing counsel to consult the indictment. The indictment, in fact, indicated that the crime took place on March 31, whereas the evidence at trial indicates that it took place on March 30. Craig claims it was prejudicial error for the court to require him to rely on the indictment. Florida Rule of Criminal Procedure 3.140 provides in part:
(o) Defects and Variances. No indictment or information ... shall be dismissed *281 or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information ... unless the court shall be of the opinion that the indictment or information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense.
Although the date on the indictment conflicts with evidence adduced at trial, the discrepancy was not prejudicial. The defendant had deposed numerous witnesses and substantially knew the sequence of events that ran from March 30 to 31. We find no error.
Craig claims a number of discovery violations took place. On the day of the trial, the state listed as a witness Officer Wilburn, who had recovered the three spent shell casings from the West Palm Beach residence. Defense counsel objected, claiming that Wilburn's name had not been included in the witness list submitted by the state. The trial court, after conducting an inquiry and proffer of proposed testimony, overruled the objection, pointing out that the defendant had been provided with a copy of the officer's report and was aware of the content of his testimony. We find no error in the court's ruling. Richardson v. State, 246 So.2d 771 (Fla. 1971); Wilcox v. State, 367 So.2d 1020 (Fla. 1979).
Craig claims that it was error for the court to allow Officer McMillan to testify concerning the recovery of Ellis's gun, since McMillan's name was not on the state's witness list and his report had not been given to the defense. The court, however, conducted an inquiry and found no prejudice since the content of McMillan's testimony was contained in two separate reports that had been submitted by the state, and defense counsel was given an opportunity to interview the witness. We find no error.
Craig's claim that he was prejudiced by the state's use of a photograph and vehicle registration form that had not been disclosed was properly rejected. Upon inquiry, the court determined that the state had disclosed its intent to use the photo as soon as it learned of its existence. Ownership of the vehicle was never in issue and the information contained in the registration form had been made available to the defense in a police report. We find no error.

PENALTY PHASE
We find a single issue dispositive of Craig's penalty phase claims. During the penalty phase, Craig's mother, father, and a friend testified to his nonviolent nature. Additionally, Craig's former school psychologist testified that she personally remembered him, that he was mentally handicapped, with an I.Q. of 54, was enrolled in special classes for the mentally handicapped, had the thought processes of a child between eight and ten years old, was deficient at abstract reasoning, and had the primitive moral judgment of a child. The jury recommended life imprisonment. The judge overrode this recommendation and imposed death.
We defined the standard for sustaining a judicial override in Tedder v. State, 322 So.2d 908, 910 (Fla. 1975):
In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
In the present case, the facts are not such that no reasonable person could recommend life imprisonment. Sufficient mitigating evidence was presented to support the jury's recommendation.
Accordingly, we affirm the conviction, reverse the sentence, and remand for imposition of a life sentence as recommended by the jury.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The court found that the murder was committed during the course of a robbery and for pecuniary gain, and was especially heinous, atrocious, or cruel. See § 921.141(5), Fla. Stat. (1989).
[2] We find that there is no reasonable possibility that the error affected the verdict.