PATTERSON, Chief Judge.
Nectali Galvez-Vasquez appeals from his judgment and sentence for burglary of a dwelling and first-degree arson. We affirm the burglary conviction, reverse the arson conviction, and remand for resen-tencing.
The State charged Galvez-Vasquez by information with one count of armed burglary of a dwelling and one count of first-degree arson in violation of sections 810.02 and 806.01(l)(a), Florida Statutes (1997). At trial, the State presented the following evidence.
*147 Fernando Ruiz testified that he lived in Billy Driggers’ house. On June 5, 1998, Galvez-Vasquez and Porfirio Barahona (the codefendant) showed up at Ruiz’s residence. They had an argument over a missing television set which resulted in Ruiz hitting Barahona’s head against a car. As the two men fled, Galvez-Vasquez stated that he would be back the next day and he “was used to killing dogs.” Ruiz testified that on the following day, Galvez-Vasquez and Barahona came back to his house in Galvez-Vasquez’s car. They brought two more people with them. Bar-ahona came on Ruiz’s porch with a firearm. Ruiz observed Galvez-Vasquez walk in a direction underneath his house which was on stilts. Ruiz testified that the individuals told him they just wanted to talk to him. Ruiz hid when he saw these people come onto his porch. Then he got his shotgun and fired several shots. The four men left the property, and one of them shouted that they would be back.
Ruiz left the house to call the police because he did not have a telephone. Deputy Sheriff David Murray met Ruiz, and they returned to Ruiz’s home. Upon arrival, Murray saw four individuals standing beside a red Firebird. Ruiz told Murray that the four individuals were the same ones who had been at his house earlier. Murray conducted a felony take down. The four men were placed in Murray’s patrol car. Murray turned on a tape recorder by the driver’s seat. During the take down, Ruiz’s home became engulfed in flames.
Deputy George Gonzalez listened to the tape recording made in Murray’s patrol car. Gonzalez testified that the tape was in Spanish, that there were many voices on the tape, and that he could identify Gal-vez-Vasquez’s voice. Galvez-Vasquez came up with a cover story that they stopped their car so one of them could relieve himself when a Corvette drove by and then they heard shots. Sergeant Chess and Gonzalez spoke with all four men. At first, Galvez-Vasquez and Bara-hona kept to their cover story. When confronted with the covert tape, their demeanor changed and so did their story.
Galvez-Vasquez told the officers that the night before there was a fight between Ruiz and Barahona. Barahona, two others, and Galvez-Vasquez went to Ruiz’s home the next day. One of the others had the shotgun to back up Barahona. Ruiz did not want to work things out and fired two shots at them. After this, they went to K-Mart to buy ammunition for the shotgun. They went back to Ruiz’s house to scare him. One of the others yelled for Ruiz to come out of the house. This person fired two shots in the air and then gave the gun to Barahona, who fired two shots as well. Galvez-Vasquez stayed outside and the other three went into the house. Ruiz was not home, so they decided to leave. Barahona put the shotgun in the woods, and the police arrived.
Gonzalez testified that Barahona told him that all four of them went in the second time they entered the house. Bar-ahona admitted to lighting a pair of underwear with a cigarette lighter and tossing it on the floor inside Ruiz’s house. He was alone in the house at that time. Gonzalez relayed that Barahona stated that he did not intend to burn the house down. According to Gonzalez, on the covert tape Galvez-Vasquez appeared to be surprised by the fact that a fire had been started.
At the close of the evidence, Galvez-Vasquez and Barahona moved for a judgment of acquittal, upon which the trial court reserved ruling. The jury returned verdicts of guilty of first-degree arson and unarmed burglary of a dwelling. The trial court denied the motions for judgment of *148 acquittal and found there was sufficient evidence to support the jury’s verdict.
On appeal, Galvez-Vasquez raises three issues and contends: (1) the State committed a discovery violation regarding the taped statement Galvez-Vasquez made in the patrol car; (2) the evidence was insufficient to sustain his arson conviction; and (3) the evidence was insufficient to sustain his burglary conviction. First, as to the taped statement, the trial court conducted a Richardson[1] inquiry and determined that no discovery violation occurred. In the cases that Galvez-Vasquez cites, Rainey v. State, 596 So.2d 1295 (Fla. 2d DCA 1992), and Blatch v. State, 495 So.2d 1203 (Fla. 4th DCA 1986), the State did not provide the substance of oral statements that the defendants had made to witnesses. In contrast, the State provided Galvez-Vasquez with a copy of the taped statement a week before the trial. Thus, the State did more than provide the substance of the oral statements; the State provided the actual statements via a copy of the tape. We agree with the State that the defense could have sought its own translation of the tape. Therefore, we affirm the trial court’s ruling that the State did not commit a discovery violation.
With respect to the arson conviction, the evidence was insufficient to sustain Galvez-Vasquez’s conviction under a principal theory. The evidence, taken in the light most favorable to the State, showed that four men, one armed with a gun, went to Ruiz’s dwelling to scare him, fight him, and to get even for an altercation Galvez-Vasquez and Barahona had with Ruiz the previous evening. The four men went in the house, but Ruiz was not there. Barahona remained in the house while Galvez-Vasquez and the other two men went to the car. While in the house alone, Barahona set a pair of Ruiz’s underwear on fire with a lighter and threw the underwear down on the wood floor. He then went back to the car, where a police officer apprehended the four men.
As the State argues, it appears that the men planned to commit an aggravated assault and/or aggravated battery. Citing Massey v. State, 755 So.2d 761, 762 (Fla. 4th DCA 2000), the State contends that the arson was not an independent act by Bara-hona because it was not outside the common design of the “original felonious collaboration.” We do not agree. It appears that the men wanted to get even with Ruiz for the previous evening, and the intent seemed to be to scare Mm or, perhaps, rough him up. In the covert tape made in the police car, Galvez-Vasquez asked how the fire was started. Deputy Gonzalez, who translated the tape, said that Galvez-Vasquez seemed surprised about the fire. Based on the original criminal scheme, it was not foreseeable that Barahona would set an article of clothing on fire and burn down the house. Thus, we reverse Gal-vez-Vasquez’s conviction for arson.
With respect to the burglary conviction, however, the evidence was sufficient to support the conviction. Evidence showed that Galvez-Vasquez entered and remained in the home without permission and that at the time he and Barahona entered the dwelling, they had an intent to commit an offense in the dwelling. See § 810.02, Fla.Stat. (1997). Regarding the second time the men entered Ruiz’s home, the jury had before it conflicting versions of events. Galvez-Vasquez denied that he ever entered the home. Barahona told the police in a taped statement, however, that on the second visit Galvez-Vasquez entered the dwelling with the others. One intruder was armed with a shotgun. Gal- *149 vez-Vasquez admitted in his taped statement that their purpose in visiting Ruiz was to scare him, and Barahona admitted in his taped statement that they were there to fight Ruiz and get even. The victim and the owner of the home testified that Galvez-Vasquez did not have permission to enter the home. Therefore, we affirm Galvez-Vasquez’s conviction for burglary. As a result of our reversal of the arson conviction, we remand the burglary conviction for resentencing.
Affirmed in part, reversed in part and remanded.
CASANUEVA and SALCINES, JJ., concur.

. Richardson v. State, 246 So.2d 771 (Fla.1971).