SHEPHERD, J.
(dissenting).
I respectfully dissent.
Although the trial court had reason to be frustrated with the conduct of the State in this case, nevertheless I am of the opinion that dismissal was premature, and would remand- this case for the completion of the Richardson hearing.
It has long been the law in this state that upon learning of a potential discovery violation, the trial court has an obligation to conduct a Richardson hearing to examine the possible harm or prejudice to the defendant. Richardson v. State, 246 So.2d 771 (Fla.1971); Evans v. State, 721 So.2d 1208 (Fla. 3d DCA 1998). In its discretion, and only after an adequate inquiry has been made into all of the surrounding circumstances, the trial court may dismiss the case. Richardson, 246 So.2d at 775. Richardson outlined the minimum framework of the.courts inquiry. Namely, the court must consider whether the States violation was inadvertent or willful; whether the -violation was trivial or substantial; and finally, whether the violation affected the defendants ability to properly prepare for trial. Id.; See also Wilson v. State, 789 So.2d 1127, 1129 (Fla. 2d DCA 2001) (outlining Richardson test). Indeed, when faced with a possible discovery violation, the court must conduct a Richardson hearing even when not requested by the defense. Evans v. State, 721 So.2d 1208, 1209-10 (Fla. 3d DCA 1998).
Applying these principles, I am of the view that it was premature to dismiss the .information. Contrary to the suggestion in the majority opinion, the State did not completely ignore the discovery orders of the trial court. Rather, it appears that the prosecutor did make efforts to obtain the necessary discovery in response to the discovery orders and provided it all — albeit in piecemeal fashion. As to the last item produced, the crime scene photos that included the controversial boot prints, the prosecutor sought to explain that her fail *706 ure to obtain them was due to miscommu-nieation among multiple parties rather than willful conduct that would demand dismissal of the information. Indeed, it is clear from the record of previous hearings that defense counsel knew certain of the photos contained a boot print, and merely asked for their production. Moreover, at these earlier proceedings, defense counsel rebuffed prosecution offers of depositions of State witnesses made in an attempt to avoid precisely the claims of prejudice that later arose. Thus, it is not at all clear to me that absent a completed Richardson hearing, the defense is entitled to a dismissal of the entire case.
Of course, the actual precipitating cause of the dismissal was the failure of the crime scene technician to be present in court on May 20, 2003, pursuant to the courts oral order of the prior day. However, the court should have at least heard argument as to why the technician failed to appear before it ascribed her absence as willful on the part of the State. Instead, the court invited and summarily granted a motion to dismiss by the defendant within seconds of the time the hearing began. Moreover, the court made no effort to determine whether there were any procedures or sanctions short of dismissal that would vitiate any prejudice to the defendant or affront to the court.
In this case, the defendant filed his notice that the speedy trial period under Fla. R.Crim. P. 3.191(a) had expired on May 15, 2003. Thus, the State had fifteen days under the so-called recapture window, i.e., until May 30, 2003, to try its case against the defendant. Armas v. State, 811 So.2d 775 (Fla. 3d DCA 2002); Fla. R.Crim. P. 3.040, 3.191(p)(3) (2004). When the court dismissed the case against the defendant on May 20, 2003, there were ten days left within the recapture window during which appellee could have mitigated, if not completely resolved, any alleged prejudice from learning of the second set of footprints the day before. The defendant still had time to examine the photographs,[1] compare the prints with the boots taken from the defendant at the time of his arrest, or to seek expert advice. At a minimum, the ultimate sanction could have been delayed until it was clear that the defendant was prejudiced by State discovery misconduct.
As the majority recognizes, dismissal represents the most severe form of sanction and is a last resort when no viable alternative exists. State v. Del Gaudio, 445 So.2d 605, 608 (Fla. 3d DCA 1984), rev. denied, 453 So.2d 45 (Fla.1984). The reasoning behind this principle is that the courts interest in punishing the State must be balanced against the even greater public interest in insuring that persons accused of crimes be brought to trial. Del Gaudio, 445 So.2d at 608. Even exclusion of a witness, much less dismissal, is an extreme sanction not to be imposed when other reasonable alternatives are available. Taylor v. State, 643 So.2d 1122, 1123 (Fla. 3d DCA 1994). See also State v. Farley, 788 So.2d 338, 340 (Fla. 5th DCA 2001) (before excluding testimony, the court must consider less alternative sanctions). The civil cases upon which the majority relies involving dismissal as a sanction for discovery violations (see Morales v. Perez, 445 So.2d 393 (Fla. 3d DCA 1984), and Singh v. Tolz, 380 So.2d 1326 (Fla. 4th DCA 1980)) do not have a public interest *707 component and do not appreciate this unusual facet of a criminal case.
While the State may have been close to the line here, my belief is that the trial court acted prematurely in administering the ultimate penalty. If, as suggested by the State, the boot-print photos were “of no value,” then the failure of the crime scene technician to appear may have been of no moment.
Accordingly, I dissent from the extreme sanction of dismissal and would reverse and remand for a full Richardson hearing.

. While certainly not binding on the defense, the prosecution indicated at the aborted Richardson hearing that it had concluded that the prints were of "no value," meaning apparently that they were of insufficient definition from which to draw any conclusions relevant to the prosecution or defense of the case. The prosecutor also stated that, to the best of her knowledge, the State had done no comparison or analysis using the photos.