**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11482
Non-Argument Calendar
_____

MICHAEL HENDERSON,

*Petitioner-Appellant,*

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

*Respondents-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-00167-WFJ-SPF
_____

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and GRANT,
Circuit Judges.

PER CURIAM:

Michael Henderson, a Florida prisoner sentenced to a term of life for capital sexual battery and lewd and lascivious molestation and battery, appeals *pro se* the denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. Henderson contends that the Florida courts unreasonably adjudicated his claims that trial counsel provided ineffective assistance by failing to secure hearings under *Richardson v. State*, 246 So. 2d 771 (Fla. 1971), to address alleged discovery violations and by failing to depose a detective. We affirm.

## I. BACKGROUND

In 2011, the state charged Henderson with sexual crimes against three young boys—D.M., A.D., and A.D.'s younger brother—based on alleged conduct that occurred between November 2007 and August 2009. The state entered a *nolle prosequi* on the charge associated with A.D.'s younger brother. Henderson pleaded not guilty to the remaining charges, and attorneys Dwight and Matthew Wells represented him at trial.

During opening statements, the state alleged that Henderson showed D.M. child pornography. Counsel objected and argued at sidebar that this allegation had "never came up before" and that he was tempted to move for a mistrial. The trial court overruled the objection, the parties gave their opening statements, and the state proceeded with its case-in-chief.

D.M. and A.D. testified that they lived in the same apartment complex as Henderson, were friends with his son, Jed, and described how Henderson sexually abused them during visits to his apartment. D.M. testified that he was not initially forthcoming

with police because he wanted to protect Henderson. He also named T.B. and R.A., two neighborhood boys, as witnesses to the alleged crimes. D.M. testified that T.B. witnessed Henderson engage in oral sex with him and that all three were naked at one point in Henderson's room.

D.M.'s mother testified that D.M. slept over at Henderson's apartment many times and that Henderson made many phone calls to D.M. toward the end of his relationship with D.M. A.D.'s mother testified to her romantic relationship with Henderson and their financial arrangement, in which she provided him financial support in exchange for childcare while she worked.

Detective Roxanne Hunt testified that D.M. viewed Henderson as a father figure and became jealous when Henderson began dating A.D.'s mother. As part of her investigation, she coordinated a controlled phone call between D.M. and Henderson, during which Henderson told D.M. to "make sure that he erased the details on his phone." Detective Hunt explained that Henderson asked D.M. to do this "since the police [could] check those records." Nearly two years after their first meeting, she recorded an interview in April 2011 with D.M. about additional allegations he had made. D.M. admitted that he had not been forthcoming because he wanted to protect Henderson.

For his defense, Henderson called Jed's mother, Jed, T.B., and R.A. Jed, T.B., and R.A. testified that they visited Henderson during the relevant period and never witnessed or participated in

any sexual activity. T.B. and R.A. testified that nothing sexual occurred between them and Henderson, nor were they involved in the scenarios D.M. described. On recall, D.M. admitted that he emailed Detective Hunt and accused Henderson of sexual misconduct with another boy because he was "mad" at Henderson. During closing arguments, the state again mentioned the child pornography allegation, which the defense countered was unsupported by any evidence.

The jury convicted Henderson of capital battery and lewd and lascivious molestation and battery, and the court sentenced him to life imprisonment without parole. The Second District Court of Appeal affirmed per curiam without opinion. *Henderson v. State*, 109 So. 3d 795 (Fla. Dist. Ct. App. 2013). The Supreme Court of the United States denied Henderson's petition for a writ of certiorari. *Henderson v. Florida*, 571 U.S. 917 (2013).

Henderson moved for postconviction relief on several grounds, only some of which are relevant to this appeal. *See* Fla. R. Crim. P. 3.850. First, he alleged that counsel was ineffective for failing to request a *Richardson* hearing when the state first mentioned the child pornography allegation during opening statements. Second, he alleged that counsel was ineffective for failing to obtain the recorded call between him and D.M., or to request a *Richardson* hearing when the state referenced it at trial. Third, he alleged that counsel was ineffective for not seeking a *Richardson* hearing on the state's failure to disclose D.M.'s recorded interview with Detective Hunt. Finally, he argued that counsel was ineffective for failing to

depose Detective Hunt before trial. The state postconviction court denied some grounds and ordered an evidentiary hearing on the four grounds mentioned above.

At the evidentiary hearing, Dwight and Matthew Wells explained the difficulties they had experienced in obtaining discovery from the state. As for the call between Henderson and D.M., it was admitted into evidence and played in court. The call captured D.M. telling Henderson that the police had asked D.M. "if you have ever touched me." Instead of surprise, Henderson responded only with "And?" before later urging D.M. to "get rid of my number" to hide their call history. Dwight admitted that he failed to obtain this call, which he knew about before trial and which he claimed would have corrected the state's narrative about who had called whom. But Matthew believed that the call would not have been helpful for the jury to hear. Both lawyers testified that they first learned of the child pornography allegation during the state's opening statement, but Matthew elected not to pursue a *Richardson* hearing because he believed a request would be futile based on the overruling of his initial objection. Finally, both lawyers conceded that they never deposed Detective Hunt or reviewed her recorded interview with D.M. Matthew dismissed Hunt's role as minor, but Dwight admitted that the failure to depose her had no strategic basis.

The state postconviction court denied the remaining grounds and ruled that Henderson failed to establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668

6                    Opinion of the Court                    24-11482

(1984). It found the recorded call inculpatory—and not prejudicial—because Henderson urged D.M. to delete records of calls between the two despite knowing that he was under investigation for allegations of sexual abuse against D.M. Regarding the child pornography allegation, it found neither deficiency nor prejudice, as counsel's decision not to pursue a "fruitless" motion was reasonable. The court excused counsel's failure to depose Detective Hunt based on counsel's chronic issues obtaining discovery from the state. And it also found that there was no prejudice from counsel's failure to obtain and introduce Detective Hunt's recorded interview with D.M., as the recording was merely cumulative of evidence that D.M. was not at first forthcoming with the police. The Second District Court of Appeal affirmed per curiam without opinion. *Henderson v. State*, 321 So. 3d 140 (Fla. Dist. Ct. App. 2020).

Henderson filed a federal petition that alleged five grounds for relief, only some of which are relevant to this appeal. *See* 28 U.S.C. § 2254. The district court denied the petition and ruled that the state court's application of *Strickland* was reasonable. On Ground 1(a), it found that counsel's decision not to pursue a *Richardson* hearing and highlight the state's lack of evidence on the child pornography allegation was a sound strategy. On Ground 1(b), it found no prejudice from the failure to play the call because Henderson's request that D.M. hide evidence made the call harmful. On Ground 1(c), it found no prejudice because the recorded interview was cumulative of evidence that D.M. was not initially forthcoming with police. On Ground 2, the district court found no deficiency in the failure to depose Detective Hunt, explaining that

there is no constitutional mandate that requires counsel to depose every witness. It also found no prejudice resulted from counsel's decision to forgo deposing Detective Hunt based on the direct victim testimony detailing the abuse. Despite its denial, the district court granted a certificate of appealability on these grounds.

## II. STANDARD OF REVIEW

We review *de novo* the denial of a petition for a writ of habeas corpus. *King v. Warden, Ga. Diagnostic Prison*, 69 F.4th 856, 867 (11th Cir. 2023). Under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254, we must give state court decisions "the benefit of the doubt." *King*, 69 F.4th at 867 (citations and internal quotation marks omitted). We cannot set aside a state court's adjudication on the merits unless it was "either contrary to, or involved an unreasonable application of, clearly established federal law or was an unreasonable determination of the facts in the light of the evidence." *Id.* (citation and internal quotation marks omitted). "A state court unreasonably applies federal law only if no fairminded jurist could agree with the state court's determination or conclusion." *Id.* (citation and internal quotation marks omitted). "We evaluate the reasons offered by the court, but if we can justify those reasons on a basis the state court did not explicate, the state-court decision must still stand." *Id.* (citing *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1036 (11th Cir. 2022) (en banc)).

## III. DISCUSSION

Henderson argues that the state court's decision was an unreasonable application of federal law based on erroneous factual

findings. He contends that his trial was unfair because counsel failed to seek a *Richardson* hearing when the allegation that he had shown D.M. child pornography surfaced in the state's opening statement. He also contends that his attorneys lacked access to a recording of a phone call between himself and D.M. and a recorded interview between Detective Hunt and D.M., and that a proper investigation, including the deposition of Detective Hunt, would have uncovered these discovery violations. Because Henderson's arguments turn on the alleged deficiencies of his attorneys and the resulting prejudice to his defense, the governing federal standard is *Strickland*.

Henderson must prove that his counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 687. Failure to establish either element defeats his claim of ineffective assistance of counsel. *Parnell v. United States*, 149 F.4th 1268, 1275 (11th Cir. 2025). To establish a deficiency, he bears a "heavy burden" of establishing that counsel's representation fell "'below an objective standard of reasonableness'" such that "no competent counsel" would have taken the action that his counsel did take. *Terrell v. GDCP Warden*, 744 F.3d 1255, 1261 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688); *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (citations and internal quotation marks omitted). To establish prejudice, he must prove a "reasonable probability" of a different result, which must be "substantial, not just conceivable." *Strickland*, 466 U.S. at 694; *Pye*, 50 F.4th at 1041 (citation and internal quotation marks omitted).

Henderson must also overcome a "doubly deferential" standard. The question is not whether the state court's determination was incorrect, but whether it was "unreasonable—a substantially higher threshold." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Mendoza v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1213, 1236 (11th Cir. 2014) (citations and internal quotation marks omitted).

The state court reasonably determined that Henderson's counsel was not deficient for not pursuing a *Richardson* hearing on the child pornography allegation. When the state mentioned the allegation in opening, counsel objected and, after the trial court overruled the objection, he made a strategic decision not to pursue a hearing based on his belief that it would have been futile. Instead, he pivoted to highlighting the lack of corroborating evidence. The state court reasonably determined that this was a sound strategy, and this determination is entitled to great deference. *See Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc) ("When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."). Because Henderson has not established a deficiency, this claim fails. *See Parnell*, 149 F.4th at 1275.

The state court also reasonably determined that Henderson suffered no prejudice from counsel's failure to obtain the phone call between himself and D.M. and D.M.'s recorded interview with Detective Hunt. As for the phone call, there is no reasonable probability of a different outcome. Although the recording established

that D.M. initiated contact with Henderson, it also captured Henderson's lack of shock when told that police asked D.M. whether Henderson had touched him. Henderson's only response was "And?" followed by an instruction for D.M. to "get rid of my number" to hide their call history. Had a jury heard this damning evidence, it would have likely bolstered the state's case. Likewise, the state court's finding of a lack of prejudice regarding the interview was reasonable because the recording was cumulative. D.M. admitted on the stand that he was not initially forthcoming with the police. The recording offered no new value. Because the introduction of the phone call or the interview would not have created a substantial likelihood of a different outcome, these claims fail. *See Pye*, 50 F.4th at 1041; *Parnell*, 149 F.4th at 1275.

Finally, the state court also reasonably ruled that Henderson suffered no prejudice as a result of counsel's failure to depose Detective Hunt. He asserts that a deposition would have helped him undermine Detective Hunt's credibility at trial. But the evidence against him was overwhelming. Both victims testified and described how Henderson groomed and abused them, using his father-like status to gain their trust. Even if counsel had impeached Detective Hunt, it would not have eroded the victims' own credibility enough to create a substantial likelihood of a different outcome. *See Pye*, 50 F.4th at 1041. Because the state court reasonably concluded that Henderson failed to establish deficiency or prejudice, this claim fails. *See Parnell*, 149 F.4th at 1275.

## IV. CONCLUSION

We **AFFIRM** the denial of Henderson's petition for a writ of habeas corpus.