DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**JOSHUA C. WILLIAMS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-4069

[August 6, 2014]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert Pegg, Judge; L.T. Case No. 312011CF000398A.

Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals his conviction for battery upon a jail detainee. He argues that the trial court erred in excluding an exculpatory defense witness at trial without considering any other alternative to exclusion. We agree with the defendant's argument and reverse.

The investigating officer's probable cause affidavit stated the following. The victim reported that, while in the jail recreation yard, another inmate named Whitehead hit him in the face with a basketball and started to punch him. The victim said that he tried to defend himself when the defendant (another inmate), ran up and punched him in the face. The victim fell to the ground and both Whitehead and the defendant punched him multiple times. The victim suffered a bloody nose and mouth, a broken jaw, and several cuts to his face. The investigating officer also spoke to two other inmates who saw the incident. They said that Whitehead started to fight the victim, then the defendant ran up and punched the victim, and when the victim went to the ground, Whitehead

and the defendant continued to punch him. The investigating officer also spoke to the correctional deputy who was in the jail recreation yard. The deputy said that when he turned around, he observed Whitehead and the defendant on top of the victim, punching him. The investigating officer also interviewed Whitehead and the defendant after reading them their *Miranda* rights. Whitehead said that he was hit by the victim and the defendant did not hit anyone. The defendant denied hitting the victim and said he was trying to break up the fight.

Based on the foregoing allegations, the state charged the defendant and Whitehead each with one count of aggravated battery upon a jail detainee.

The state's discovery exhibit in the defendant's case did not list Whitehead as a person "known to the prosecutor to have information that may be relevant to [the] offense charged or any defense thereto[.]" *See* Fla. R. Crim. P. 3.220(b)(1)(A). The only mention of Whitehead in the state's discovery exhibit was in response to the category of "any written or recorded statements and the substance of any oral statements made by a codefendant": "Whitehead told [the investigating officer] that [the victim] hit him and that [the defendant] did not hit anyone." *See* Fla. R. Crim. P. 3.220(b)(1)(D).

Within the state's discovery exhibit, the state demanded the defendant, within fifteen days, to furnish to the prosecutor a written list of the names and addresses of all witnesses whom the defendant expected to call at the trial. *See* Fla. R. Crim. P. 3.220(d)(1)(A). However, the defendant never furnished the prosecutor with any witness list.

The case proceeded to jury selection on a Monday. At the outset of jury selection, when the trial court asked the prosecutor to announce to the jury pool the names of any witnesses she expected to call to testify, the prosecutor announced several names, but did not announce Whitehead's name. When the court asked defense counsel if he had any additional names to announce, defense counsel announced: "[W]e may call any and all State witnesses as well as Devante Whitehead." The state did not object or request a *Richardson* hearing at that time. The jury was selected and sworn at the end of that Monday and told to return on Friday for trial.

That Friday morning, before opening statements, the following exchange occurred between the prosecutor and the court regarding the need for a *Richardson* hearing:

> PROSECUTOR: During jury selection[,] [defense counsel] mentioned the name of a potential witness that he may call,

2

which is the former codefendant, Devante Whitehead. [Defense counsel] has never filed any type of witness list. So the State is going to ask for a *Richardson* hearing.

COURT: No problem. As soon as [defense counsel], if he calls the witness, we'll have a *Richardson* hearing right on the spot.

PROSECUTOR: Okay.

The record does not indicate why the court did not immediately conduct the *Richardson* hearing or why the state and the defense did not object to the delay in conducting the *Richardson* hearing until the defense called Whitehead as a witness.

When the court called upon the prosecutor to make an opening statement, the prosecutor asked for a bench conference. At the bench, the prosecutor said that she just noticed Whitehead, whom she referred to as "the potential codefendant witness," sitting in the hallway with the state witnesses. The prosecutor notified the court of her concern in that regard. However, the prosecutor did not follow up on her request for a *Richardson* hearing regarding Whitehead as a potential defense witness.

The state, during its case-in-chief, called seven witnesses: the investigating officer, the two inmates who witnessed the fight, the victim, two corrections deputies who were involved in investigating the fight, and the doctor who treated the victim for his injuries. All testified consistently with the probable cause affidavit.

Immediately after the court excused the jury for their lunch break, the court announced that it would conduct the *Richardson* hearing at that point. Because of the hearing's significance, we recite the hearing's transcript in detail:

COURT: Let me ask [defense counsel], do you intend to call Devante Whitehead?

DEFENSE: Yes, your Honor.

COURT: And why would you not list him as a witness?

DEFENSE: I was not instructed until jury selection my client was directing me to list him.

3

COURT: . . . Well, under the *Richardson* test the violation was not willful from [defense counsel's] part, but . . . [Whitehead has] been known to everybody since [the date of the incident]. The discovery rules are there for a reason. I understand . . . the defendant may want [Whitehead] to testify, but that's not the way the system operates. You want to list him as a witness, you have every right to do so. *You have not listed [Whitehead] as a witness yet and [he] will not be permitted to testify in this case.*

DEFENSE: . . . [R]espectfully, Judge . . . [T]hat's the most extreme remedy.

COURT: Yeah, it's extreme, that's why it is extreme in this case because we're talking about people who were listed late. This witness wasn't listed late, this witness is not listed. *The jury's been sworn and still not listed. That's my final ruling. This witness is not testifying in this case. That's that . . . .*

. . . .

DEFENSE: . . . Judge, I don't see how the State's prejudiced. They knew . . . all this . . . .

COURT: . . . [S]o did you. *You knew he is a witness in this case since day one. You could have listed him as a witness. You chose not to do so. You made that decision and we're not going to change it now to take advantage of it.*

PROSECUTOR: Judge . . . because the case law is very clear . . . excluding the witness is the most severe sanction[,] I would like to put a couple things on the record in case this is reviewed by . . . [an] appellate court, that this witness . . . has still not been listed. It was just orally announced during jury selection. . . . [T]he state would be prejudiced by his testimony because I would have prepared this case somewhat differently had I known Mr. Whitehead was going to testify. . . . Mr. Whitehead has been out of custody for some time. I would have ordered jail calls with the defendant to see if the two had been talking [a]bout the case. . . . I would have . . . gotten an investigator to hunt him down. . . . I think that's kind of moot at this point because he showed up though . . . I don't know how . . . he showed up.

. . . .

And, Judge, the State asked, because I was willing to try to depose him . . . I asked [defense counsel] . . . yesterday morning, are you going to call him, if you are, can you make him available for me to depose him[?] . . . [Defense counsel] still has not responded and I still have not been able to take his deposition. So my argument is that it is a willful violation, not only on the part of the defendant for telling his attorney that, but if [defense counsel] really wanted to remedy the situation and I was doing my part to try to help that, he would have made him available for me to take his deposition.

. . . .

DEFENSE: Judge, I was not able to get him under subpoena until late yesterday. . . . He's here today. . . . She can depose him now.

COURT: . . . We're going to be back here in an hour and ten minutes from now [to resume the trial].

DEFENSE: . . . [The prosecutor] can depose him. She could have called him. She did neither. He's on probation. She can make the probation officer have him come here. She knows that because she put him on probation.

PROSECUTOR: . . . Judge, I do have a case too that I'll cite for the record. It's *Wolski v. State,* 515 So. 2d 433 [(Fla. 4th DCA 1987)] . . . where it was a codefendant very similar to this situation . . . . [I]t upheld an exclusion of the codefendant as a witness because the court did conduct a proper and adequate *Richardson* hearing . . . .

COURT: *And this kind of thing is just . . . unacceptable in this kind of case . . . not listing witnesses on purpose.* Whether it's the defendant's fault or counsel that chose not to do it, I don't know, but the witness never was listed in this case and . . . it was willful and it's a clear violation and *the final decision is Mr. Whitehead will not testify* . . . .

DEFENSE: Judge, just one thing. With regards to willfulness, I wasn't instructed by my client until . . . jury

5

selection that day when I announced it. . . . I haven't been sitting on this witness.

COURT: . . . I understand. I'm not accusing you of . . . any misconduct, I'm just . . . telling you that . . . this witness could have been listed a long time ago under the normal discovery process . . . . But . . . we're going to conduct the case like this . . . and *that's my final word on it* . . . .

. . . .

DEFENSE: Your Honor . . . . I'm sorry to rehash something . . . . The case that [the prosecutor] provided, that witness was . . . introduced after the judgment of acquittal. So the procedural prejudice in that case was more apparent.

. . . .

COURT: [Whitehead] is not testifying. That's the way that's going to be. We're not going to do all this dancing around at the end of a trial when . . . your client knew about . . . [Whitehead's] existence from [the date of the incident] . . . [then] decides he wants to call [Whitehead] . . . during jury selection. I don't think so. That's just a willful [violation to] try to create error in the record.

(emphasis added).

Defense counsel later proffered testimony from Whitehead outside the jury's presence. Whitehead testified that he hit the victim first, and the only time he saw the defendant was when the defendant pulled him off the victim. He said he did not see the defendant do anything else in the fight.

After the jury returned, the defendant testified that he saw Whitehead and the victim exchange punches. He said that his role was just trying to break up the fight by grabbing Whitehead because he did not want to see Whitehead get in trouble. He denied hitting the victim.

The jury convicted the defendant of the lesser-included offense of battery of a prison detainee.

This appeal followed. The defendant argues that the trial court erred in excluding Whitehead as an exculpatory witness without considering any other alternative to exclusion. We review the court's decision for an abuse

6

of discretion. *See Delhall v. State*, 95 So. 3d 134, 160 (Fla. 2012) ("A trial court's decision on a *Richardson* hearing is subject to reversal only upon a showing of abuse of discretion.") (citation and quotation marks omitted).

We agree with the defendant's argument. We conclude that the trial court erred in excluding Whitehead as an exculpatory witness without considering any other alternative to exclusion.

The emphasized portion of the *Richardson* hearing makes clear that the trial court decided to exclude Whitehead as a witness without conducting an adequate *Richardson* hearing and without considering any other alternative to exclusion. As our supreme court most recently stated in *Delhall*:

> Where a discovery violation occurs, we held in *Richardson v. State,* 246 So. 2d 771 (Fla. 1971), that the trial court must conduct an inquiry as to whether the violation: (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation. *Id.* at 774–75. This Court will review the record to determine if the inquiry was properly made and if the trial court's actions pursuant to the inquiry were proper. . . . Often, a *Richardson* violation involves a discovery violation by the State. The same rules apply, however, regardless of which party is at fault. The following questions will be examined in turn: Whether the trial court conducted an adequate *Richardson* inquiry; whether the trial court erred in excluding the [evidence]; and whether any error was harmless beyond a reasonable doubt.

95 So. 3d at 160-61.

Here, the trial court did not conduct an adequate *Richardson* inquiry before deciding to exclude Whitehead as a witness. The court addressed only whether the violation was willful, and *initially* stated the violation was *not* willful from defense counsel's part. The court did not address whether the violation was substantial or trivial or had a prejudicial effect on the state's trial preparation before announcing its decision to exclude Whitehead as a witness. Thus, we are compelled to conclude from this record that the court excluded Whitehead as a witness because of the defendant's failure to comply with the discovery rules, standing alone. This was error. *See Delhall*, 95 So. 3d at 162 ("[T]he failure of either the State or a defendant to comply with a discovery deadline, standing alone, is not dispositive for purposes of determining whether the sanction of exclusion of a witness or other evidence is appropriate and the inquiry

7

must involve a determination of whether the violation resulted in substantial prejudice to the opposing party.") (citation and internal quotation marks omitted).

The prosecutor clearly attempted to protect the court from its error by informing the court how the state was prejudiced by the defendant's untimely decision to call Whitehead as a witness, and by informing the court that she sought to depose Whitehead between jury selection and opening statements. However, we cannot ignore the plain fact that the circuit court decided to exclude Whitehead as a witness without considering that information and without considering any other alternative to exclusion. Moreover, although the court ultimately stated its finding that the defendant's violation was willful, the court never made any findings for our review as to whether the violation was substantial or trivial or had a prejudicial effect on the state's trial preparation.

The trial court also erred in excluding Whitehead without considering any other alternative to exclusion. As our supreme court stated in *Delhall*:

> It is well-settled that when a discovery violation is committed by the State, exclusion of the evidence is viewed as an extreme sanction to be employed only as a last resort and only after the court determines no other reasonable alternative exists to overcome the prejudice and allow the witness to testify. . . . [T]his rule applies with equal or greater force when a defense witness or evidence is sought to be excluded for a defense discovery violation, because there are few rights more fundamental than the right of an accused to present evidence or witnesses in his [or her] own defense. The extreme sanction of excluding defense evidence should be used only as a last resort and it is incumbent upon the trial court to determine whether any other reasonable alternatives can be employed to overcome possible prejudice. Here, exclusion of the evidence was actually the first resort, not the last.

95 So. 3d at 162-63 (internal quotation marks, citations, brackets, and footnote omitted). Here, as in *Delhall*, it also appears that exclusion of the evidence was the first resort, not the last. Accordingly, we conclude that the trial court erred when it failed to conduct an adequate *Richardson* inquiry and excluded the testimony of the defense witness without considering less extreme alternatives. *See McDuffie v. State*, 970 So. 2d 312, 322 (Fla. 2007) (same holding under similar circumstances).

The court's error was not harmless beyond a reasonable doubt. Our supreme court has defined the harmless error test as placing "the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *DiGuilio v. State*, 491 So. 2d 1129, 1135 (Fla. 1986). Here, a reasonable possibility exists that the error contributed to the conviction. Besides the defendant himself, Whitehead was the defendant's only potentially exculpatory witness. Although the state presented other witnesses who appeared to provide overwhelming evidence of the defendant's guilt, the harmless error test "is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. . . . The question is whether there is a reasonable possibility that the error affected the verdict." *Id.* at 1139. Here, if the jury were to have believed Whitehead's testimony over the other witnesses' testimony, then a reasonable possibility exists that the error in excluding his testimony without considering any other alternative affected the verdict.

This case is distinguishable from *Wolski v. State*, 515 So. 2d 433 (Fla. 4th DCA 1987), upon which the state relied in the trial court. In *Wolski*, at the close of the state's case, the trial court granted the co-defendant's motion for a judgment of acquittal. The defendant then announced his intention to call the co-defendant as a witness. The state objected and argued that the defendant's failure to list the co-defendant as a witness constituted a discovery violation. The trial court agreed and found that the state would suffer prejudice if it allowed the co-defendant to testify. Upon his conviction, the defendant sought a new trial based on the trial court's exclusion of the co-defendant's testimony at trial.

We found no error in the trial court's exclusion of this testimony. *Id.* at 433. In a brief opinion, we concluded that the trial court conducted an adequate hearing as required by *Richardson*, and that the record supported the exclusion of the witness based on prejudice to the state. *Id.* We also noted that the defendant admitted he could, and in fact did, present the same testimony with two other witnesses. *Id.*

Unlike the trial court in *Wolski*, the trial court here did not conduct an adequate hearing as required by *Richardson* and never made a finding of prejudice to the state. We also question whether the record supported the exclusion of the witness based on prejudice to the state, when the prosecutor knew of Whitehead and of the substance of his testimony from the probable cause affidavit, as confirmed by the state's discovery exhibit. *See Patterson v. State*, 419 So. 2d 1120, 1123 (Fla. 4th DCA 1982)

9

(exclusion was too severe a sanction where the prosecutor "knew of the excluded witness and of the substance of the witness's testimony before the trial commenced," and "[a]lthough the prosecutor claimed that he was surprised, he did not indicate . . . that the prejudicial surprise, if any, could not be cured by a less severe remedy"). Also, unlike the defendant in *Wolski*, the defendant here could not present the same testimony as Whitehead with another witness other than himself.

Before completing this opinion, we wish to convey the additional point that the defendant and the state also should bear responsibility for the trial court's error.

The trial court correctly observed that the defendant knew that Whitehead was "a witness in this case from day one," "could have listed him as a witness," and "chose not to do so." The trial court also was appropriately frustrated that it should not have had to "do all this dancing around at the end of a trial" when the defendant knew about Whitehead's existence from the date of the incident, and then decided that he wanted to call Whitehead during jury selection. Clearly, the defendant's failure to serve a witness list ultimately led to the court's error.

The state also contributed to the court's error by failing to object or request a *Richardson* hearing when, at the outset of jury selection on a Monday, defense counsel announced that he may call Whitehead as a witness. Without the state speaking up, the court had no reason to know that an issue existed. If the state had done so, then the court, without a continuance, could have allowed the state to depose Whitehead, obtain certified copies of his criminal record for impeachment, discover any other impeachment information, and plan a rebuttal case. The record also contains no information that a brief continuance, if necessary to accomplish these reasonable remedies, would have prejudiced either the state, the defense, or the court.

The last contribution to the error occurred when, on the morning of trial, the state finally requested a *Richardson* hearing, and the court made the unprompted decision to delay the *Richardson* hearing from before opening statements until the defense called Whitehead as a witness. The record does not indicate why the court did not immediately conduct the *Richardson* hearing or why the state and the defense did not object to the delay in conducting the *Richardson* hearing until the defense called Whitehead as a witness. While we appreciate that the court and counsel may not have foreseen a problem with the delay, perhaps this appeal could have been avoided if the *Richardson* hearing occurred at that moment. While we know of no rule or supreme court case requiring that a court

conduct a *Richardson* hearing immediately upon request or soon thereafter, the more prudent course in the future may be for the court and the parties to consider conducting the *Richardson* hearing sooner rather than later when remedies other than exclusion of a witness are more readily available.  *But see Sears v. State*, 656 So. 2d 595, 596 (Fla. 1st DCA 1995) ("Once the asserted discovery violation was brought to the court's attention, the trial judge was required to conduct an inquiry, rule on whether a violation occurred, and determine whether the evidence was admissible.") (citations omitted).

In sum, because the trial court decided to exclude Whitehead as a witness without conducting an adequate *Richardson* hearing and without considering any other alternative to exclusion, the court erred.  The error was not harmless.  Based on the foregoing, we are compelled to reverse the defendant's conviction and remand for a new trial.

*Reversed and remanded for new trial.*

GROSS and CONNER, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

11