[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16745
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-00199-WTH-PRL


LAWRENCE ANDREW INGRAM,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 1, 2018)

Before TJOFLAT, MARTIN, and NEWSOM, Circuit Judges.

PER CURIAM:

Lawrence Andrew Ingram, a Florida prisoner proceeding pro se, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. We granted a certificate of appealability on whether Ingram's trial counsel was constitutionally ineffective for failing to move for a new trial based on the state trial court's erroneous ruling that evidence excluded under Richardson v. State, 246 So. 2d 777 (Fla. 1971), could be admitted for impeachment purposes if Ingram testified. After careful review, we affirm.

I.

A.    TRIAL PROCEEDINGS

Ingram was accused of long-term sexual abuse by his daughter in 2004. Shortly before trial, the government disclosed that law enforcement found evidence on Ingram's computer showing visits to websites featuring incestuous sexual relationships. Ingram's trial counsel moved to exclude this evidence under Richardson, arguing it was substantial evidence and its late disclosure was extremely prejudicial to the defense because it would take an expert witness's help to prepare to rebut it. The state trial court granted the motion, noting it had taken a forensic computer analyst to compile the evidence for the government; the evidence was relevant and "materially injurious" to Ingram; and there was no opportunity before trial for defense counsel to review the evidence. However, the court also stated that if Ingram got on the stand and said "he's never looked at

2

pornography," he would open the door to this evidence. His counsel said, "I agree," and did not object to the ruling.

At trial, both Ingram's daughter and son testified he had sexually abused them. On June 10, 2005, before the defense began presenting its case, Ingram, his counsel, and the court had an extended discussion about Ingram's decision on whether to testify. Ingram acknowledged he understood it was ultimately his decision to testify or not. His counsel explained why he advised Ingram against testifying. Counsel said he thought the computer evidence was "potentially devastating." Although counsel did not think Ingram's general testimony denying he had sexually abused his daughter would open the door to the computer evidence, counsel was concerned that simply taking the stand would open Ingram up to credibility attacks, including questions related to viewing pornography. The court agreed: "[I]f [Ingram] chooses to be a witness, . . . I can picture the question, [y]ou deny having sex with your children, but you like to watch web sites, don't you, or, you like to watch movies about that, don't you?" The court said if Ingram answered no, then the computer evidence would be in. Ingram and his counsel both indicated they understood. Ingram then told the court he would not testify because he knew it would lead to the admission of the computer evidence.

The jury convicted Ingram of sexually abusing his daughter, but not his son. A Florida Appeals Court summarily affirmed. Ingram v. State, 939 So. 2d 113 (Fla. 5th DCA 2006) (table decision).

B.    POST-CONVICTION PROCEEDINGS

1. State Court

Ingram sought post-conviction relief under Florida Rule of Criminal Procedure 3.850. In part, he alleged ineffective assistance of counsel based on his lawyer's (1) failure to object to the state trial court's erroneous ruling that the computer evidence could be used to impeach Ingram's credibility, (2) failure to move for a new trial based on the erroneous ruling because it prevented Ingram from testifying, and (3) incorrect advice to Ingram on the night of June 9, 2005 that the Richardson ruling was preserved for appeal regardless of whether he testified the next day. The state habeas court held an evidentiary hearing in 2011.

At the hearing, Ingram's trial counsel said he talked to Ingram about testifying many times before trial. Counsel believed that, in general, a defendant's testimony is important in a child abuse case if the defendant can explain why a child might fabricate an allegation. Counsel said the main reason Ingram didn't testify was because it would lead to the admission of the computer evidence.

Counsel also said he knew the state trial court's Richardson ruling was wrong and Ingram couldn't legally be impeached by the computer evidence if he

4

took the stand.[1]  He explained that he deliberately did not point out the error because he believed the judge would have continued the trial to allow the defense time to prepare a rebuttal to the computer evidence and then allowed that evidence to come in not just for impeachment purposes, but also in the government's case-in-chief.  Counsel had experience with judges doing this before: "cure the Richardson hearing problem by doing a recess, having me take the deposition, and then change his mind and let [the challenged evidence] in."  And because counsel believed the computer evidence to be "devastating," he did not want it "com[ing] in in any shape or fashion."

Ingram's trial counsel agreed that the trial court's erroneous Richardson ruling could have been raised in a motion for new trial and that there was no reason not to include it because "at that point, [Ingram's] convicted."  He further explained the failure to file the motion for new trial resulted from a procedural error in his office, for which he took responsibility.  Counsel also agreed that Ingram could not have knowingly waived his right to testify without being told that the state trial court's Richardson ruling was erroneous.  Counsel could not recall whether he told Ingram the Richardson ruling was erroneous or his concern that the judge would respond by continuing the trial and allowing the government to bring in the computer evidence in its case-in-chief.

---

[1] See Elledge v. State, 613 So. 2d 434, 436 (Fla. 1993) ("[T]here is neither a rebuttal nor impeachment exception to the Richardson rule.").

Ingram also testified at the evidentiary hearing.  Ingram said his testimony at trial would have (1) denied the allegations; (2) expanded on his alibi defense for one instance of sexual abuse; (3) described the "dynamics" of his household, including his relationship with his daughter and possible reasons she might have had to fabricate the charges; (4) explained the context for statements he made after his arrest; (5) rebutted or explained the contents of his daughter's journal; and (6) generally "explain[ed] the whole family picture of how we got before the Court that day."  Ingram then gave this testimony in detail.  He also said that on the night of June 9, 2005, he and his trial counsel discussed whether the Richardson ruling was preserved for appeal in the context of whether he should testify.

The state habeas court denied post-conviction relief.  In relevant part, the court determined Ingram's trial counsel's performance was not deficient because he had "ample strategic reasons" not to challenge the state trial court's erroneous Richardson ruling and these reasons were "reasonable."  The state habeas court also determined Ingram couldn't show prejudice because "[t]here [was] no showing that had [Ingram] testified, the outcome of the proceeding would have been different."  The court noted Ingram would have only denied the sexual allegations, and the witnesses against him were cross-examined.  The state habeas court also concluded Ingram could not show prejudice from counsel's failure to

file a motion for new trial on the basis of the erroneous <u>Richardson</u> ruling because that ruling "was tested on appeal."

The state habeas court determined there was nothing in the record or that came out in the evidentiary hearing to support Ingram's claims that his counsel misadvised him about whether he needed to testify to preserve the erroneous <u>Richardson</u> ruling for appeal. That court said "the matter was discussed and counsel advised the Defendant about the consequences of him testifying, and the Defendant elected not to testify." Ingram appealed the denial of post-conviction relief, but it was affirmed without written opinion. <u>Ingram v. State</u>, 100 So. 3d 712 (Fla. 5th DCA 2012) (per curiam).

## 2.  <u>Federal Court</u>

Ingram then filed a motion under 28 U.S.C. § 2254 in federal court. After the State responded, the district court denied relief. Ingram filed a motion to alter or amend judgment, which was denied. The district court also denied a certificate of appealability ("COA"). After Ingram filed a notice of appeal, this Court granted a COA on the following issue:

> Whether counsel was ineffective for failing to file a motion for a new trial on the basis that the trial court's ruling regarding the evidence of incest-related material on Mr. Ingram's computer violated <u>Richardson v. State</u>, 246 So. 2d 777 (Fla. 1971).

II.

When a state habeas court has adjudicated a claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a federal court to grant habeas relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).  A federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence.  See id. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  Thus, while we review de novo the federal district court's decision, we review the state habeas court's decision with deference.  Reed v. Sec'y, Fla. Dep't of Corr., 593 F.3d 1217, 1239 (11th Cir. 2010).

To prove ineffective assistance of counsel, the petitioner must show his attorney's performance was deficient and that the deficient performance prejudiced him.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  An attorney's performance is deficient if it falls below "the range of competence demanded of attorneys in criminal cases."  Id. (quotation omitted).  Courts apply a "strong presumption that counsel's conduct falls within the wide range of

8

reasonable professional assistance" and the petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689, 104 S. Ct. at 2065 (quotation omitted). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016). Prejudice means "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

## III.

At the state evidentiary hearing, Ingram's trial counsel acknowledged his mistake in failing to file a motion for new trial, in which he would have included the erroneous Richardson ruling as a basis for relief. The state habeas court determined the erroneous Richardson ruling was tested on appeal, and so there was no prejudice from the failure to file a motion for new trial for this reason. However, the district court found Ingram did not challenge the Richardson ruling on appeal, and the State does not dispute this finding. Thus, the state habeas court's decision that Ingram couldn't show prejudice under Strickland was based on an "unreasonable determination of the facts." See 28 U.S.C. § 2254(d)(2), (e)(1). We must therefore resolve Ingram's ineffective assistance claim "without

the deference AEDPA otherwise requires." Panetti v. Quarterman, 551 U.S. 930, 953, 127 S. Ct. 2842, 2858 (2007).

Applying the Strickland test, however, we conclude Ingram cannot show prejudice. That is, he cannot show he would have been entitled to a new trial if his counsel had filed a motion based on the trial court's erroneous Richardson ruling. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Under Florida law, a trial court shall grant a new trial if "[t]he court erred in the decision of any matter of law arising during the course of the trial" and the "substantial rights of the defendant were prejudiced thereby." Fla. R. Crim. P. 3.600(b)(6). Generally, Florida courts cannot "entertain[] a motion for new trial . . . absent an objection." State v. Goldwire, 762 So. 2d 996, 998 (Fla. 5th DCA 2000); accord State v. Brockman, 827 So. 2d 299, 303 (Fla. 1st DCA 2002). The purpose of this "contemporaneous objection rule" is "to give trial judges an opportunity to address objections made by counsel in trial proceedings and correct errors." State v. Rhoden, 448 So. 2d 1013, 1016 (Fla. 1984), rev'd on other grounds by Cargle v. State, 770 So. 2d 1151, 1152–54 (Fla. 2000). "The rule prohibits trial counsel from deliberately allowing known errors to go uncorrected as a defense tactic and as a hedge to provide a defendant with a second trial if the first trial decision is adverse to the defendant." Id.

However, a Florida trial court can consider a claimed error on a motion for a new trial even when there wasn't a contemporaneous objection, if the error was "fundamental." See Goldwire, 762 So. 2d at 998. Fundamental errors "go[] to the foundation of the case." Jackson v. State, 983 So. 2d 562, 568 (Fla. 2008) (quotation omitted). This type of error "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Goldwire, 762 So. 2d at 998 (quotation omitted). But even fundamental errors will escape review if defense counsel affirmatively agreed to the trial court's conduct—that is, they were aware of the court's omission or error, and affirmatively agreed to it or asked for it. See Blandon v. State, 657 So. 2d 1198, 1199 (Fla. 5th DCA 1995) ("Fundamental error analysis would not apply if the defendant knowingly waived the [objection]," that is, if "defense counsel makes a tactical decision" not to object).

During the Richardson hearing and during the trial court's discussion with Ingram and his counsel about Ingram's decision to testify, counsel did not object to the trial court's ruling that the computer evidence could come in as impeachment if Ingram testified. Absent a contemporaneous objection or fundamental error, the trial court could not have entertained a motion for new trial on this ground. See Goldwire, 762 So. 2d at 998.

11

Even assuming the erroneous <u>Richardson</u> ruling was a fundamental error under Florida law so that the contemporaneous-objection rule did not apply, <u>Blandon</u> would still have barred the trial court from entertaining a motion for new trial on this ground.  At the state evidentiary hearing, trial counsel testified he knew the trial court's <u>Richardson</u> ruling was erroneous at the time it was made.  He said he did not object to it because he knew, from experience, that the court would simply grant a continuance to cure the prejudice from the late disclosure of the computer evidence, and then allow it to come in.  Counsel believed this evidence would be "devastating" to his client's case.  Based on this testimony, the state habeas court determined counsel's failure to object was not deficient performance because he had "ample strategic reasons" not to challenge the trial court's erroneous <u>Richardson</u> ruling and "[t]hose reasons were, under the circumstances, reasonable."  The state court's finding that counsel's failure to object was not deficient is owed double deference.  <u>See</u> <u>Daniel</u>, 822 F.3d at 1262.  Ingram has not shown this finding was contrary to, or involved an unreasonable application of, clearly established federal law, and we denied a COA on the issue of counsel's deficient performance for failure to object.[2]  <u>See</u> 28 U.S.C. § 2254(d)(1); <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065.

---

[2] Ingram argues his counsel's tactical decision was unreasonable because it interfered with his right to testify.  Even if this argument were not waived by Ingram's failure to raise it in his opening brief, <u>see</u> <u>Sapuppo v. Allstate Floridian Ins. Co.</u>, 739 F.3d 678, 682–83 (11th Cir.

Trial counsel's failure to object was not deficient conduct, but a reasonable tactical choice.  Under Blandon, the tactical choice means counsel affirmatively agreed to the trial court's ruling, "knowingly waived" his objection, and could not "benefit from that decision" on a motion for new trial.  See Blandon, 657 So. 2d at 1199; Goldwire, 762 So. 2d at 998.  Therefore, even if counsel had filed a motion for new trial based on the erroneous Richardson ruling, Ingram would not have been entitled to a new trial under Florida law.  Ingram cannot show prejudice from counsel's failure to file a motion for a new trial, and thus cannot prove ineffective assistance of counsel.  See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

**AFFIRMED.**

---

2014), it is without merit.  Ingram's argument is another ineffective assistance of counsel claim—this one alleging counsel's failure to inform Ingram that the state trial court's Richardson ruling was erroneous and include him in the strategic decision-making prejudiced Ingram by preventing him from making a knowing decision not to testify.  Ingram testified at the state evidentiary hearing, however, that he and his counsel discussed whether the Richardson ruling was preserved for appeal on the night of June 9, 2005 in the context of whether or not Ingram should testify.  Inherent in that discussion is an explanation of why the Richardson ruling was appealable—that is, why it was erroneous or objectionable.  Thus, the record belies Ingram's claim of ineffective assistance on this ground.